2024 IL App (4th) 231248

NO. 4-23-1248

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 16, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JAMES H. SCHWARTZ, Executor of the Estate of Jerome H. Schwartz, Deceased, and ASSOCIATED INSURANCE GROUP, INC., | ) ) ) | Petition for Review of an Order of the Human Rights Commission. |
| Petitioners, | ) | |
| v. | ) | No. 18-0206C |
| THE ILLINOIS HUMAN RIGHTS COMMISSION, THE DEPARTMENT OF HUMAN RIGHTS, and KELLY FRANCHINO, | ) ) ) | |
| Respondents. | ) | |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices Harris and Grischow concurred in the judgment and opinion.

**OPINION**

¶ 1 From August 2016 to February 2017, Kelly Franchino was employed by Associated Insurance Group, Inc. (AIGI), an insurance agency owned by Jerome H. Schwartz. On Franchino's behalf, the Department of Human Rights (Department) filed complaints with the Illinois Human Rights Commission (Commission) against AIGI and Schwartz (collectively, the employers), alleging that they committed civil rights violations involving Schwartz's sexual harassment of Franchino.

¶ 2 While the administrative proceeding was pending, the employers failed to comply with several orders of the administrative law judge (ALJ) assigned to the case. As a sanction, the ALJ recommended that the Commission hold the employers liable by default. The employers

failed to participate in further proceedings before the ALJ, which included a public hearing on damages, posthearing briefing, and supplemental briefing on the amount of Franchino's attorney fees and costs. The ALJ ultimately recommended that the Commission award Franchino a total of $673,280.73 in monetary relief, before interest.

¶ 3        At that point, the employers asked the Commission to set aside the ALJ's recommendations and remand the case to the ALJ for a full hearing on the merits. Instead, the Commission declined to review the ALJ's recommended order, making it the order of the Commission. *Franchino*, Ill. Hum. Rts. Comm'n Rep. 2017CN2618, 2023 WL 5428833 (Aug. 15, 2023).

¶ 4        On review before this court, the employers argue that the Commission's order is in error. We hold that (1) the Commission exceeded its statutory authority by finding Schwartz liable for monetary relief that was not sought in the complaint against him and (2) the Commission's award of $325,000 in damages for emotional distress constituted an abuse of discretion. Accordingly, we affirm the Commission's order in part, vacate it in part, and remand for further proceedings before the Commission.

¶ 5                                    I. BACKGROUND

¶ 6                              A. The Illinois Human Rights Act

¶ 7        Under the Illinois Human Rights Act (Act) (775 ILCS 5/1-101 *et seq.* (West 2022)), an employee's charges of employment-related civil rights violations are initially investigated by the Department, which determines whether there is substantial evidence to support the charges. (*id.* § 7A-102). If the Department concludes that there is substantial evidence, the employee may ask the Department to "prepare a written complaint, under oath or affirmation, stating the nature

of the civil rights violation substantially as alleged in the charge[s] previously filed and the relief sought on behalf of the [employee]." *Id.* § 7A-102(F)(1).

¶ 8    The complaint is filed in an administrative proceeding before the Commission, which has the statutory authority to award a variety of remedies to the employee, including back pay, actual damages, awards of interest, attorney fees, and costs. *Id.* § 8A-104. The Commission assigns the case to an ALJ, who takes evidence at a public hearing, makes findings of fact, and recommends an order for appropriate relief for the employee, if the ALJ finds by the preponderance of the evidence that the employer has committed a violation of the Act. *Id.* § 8A-102; see 5 ILCS 100/10-5 (West 2022) (prescribing the procedures for an administrative hearing before an ALJ).

¶ 9    The employer may ask a three-member panel of the Commission to review the ALJ's recommended order. "If the panel declines to review the recommended order, it shall become the order of the Commission. *** If the panel accepts the case, it shall review the record and may adopt, modify, or reverse in whole or in part the findings and recommendations of the [ALJ]." 775 ILCS 5/8A-103(E)(1) (West 2022). The Act provides that "the Commission shall adopt the [ALJ's] findings of fact if they are not contrary to the manifest weight of the evidence." *Id.* § 8A-103(E)(2). The three-member panel then files its written order and decision, which is the order of the Commission. *Id.* § 8A-103(E)(3). If the employer is dissatisfied with the three-member panel's decision, then the employer may seek a rehearing before the full seven-member Commission. *Id.* § 8A-103(F)(1). If the full Commission denies rehearing, the three-member panel's order remains the order of the Commission; otherwise, the full Commission's subsequent order becomes the order of the Commission. *Id.* § 8A-103(F)(3).

¶ 10    The employer may seek direct review of the Commission's order in this court. *Id.* § 8-111(B); see Ill. Const. 1970, art. VI, § 6 ("The Appellate Court shall have such powers of

direct review of administrative action as provided by law."); see also 735 ILCS 5/3-113 (West 2022) (establishing the procedures for statutory direct review). The Commission may stay the enforcement of its order pending direct review. See 775 ILCS 5/8-111(B) (West 2022); Ill. S. Ct. R. 335(g) (eff. July 1, 2017).

¶ 11        In these circumstances, the denomination of the parties can create some confusion. Before the Department and the Commission, the employee is designated the "claimant" and the employer is designated the "respondent," *i.e.*, the party responding to the employee's claim of a civil rights violation. Before this court, however, the employer is designated the "petitioner" and the Commission, the Department, and the employee are designated the "respondents," *i.e.*, the parties responding to the employer's argument that the Commission's order was in error.

¶ 12        In an attempt to lessen that confusion in this case, we will generally refer to the parties using the designations above (*supra* ¶ 1), and any reference to a claimant or a respondent refers to that party's designation before the Commission. In this case, briefs have been submitted by (1) Schwartz and AIGI, (2) the Commission and the Department, and (3) Franchino. When discussing the arguments raised in these briefs, we will attribute those arguments to (1) the employers, (2) the Commission, and (3) Franchino, respectively.

¶ 13                              B. The Complaints

¶ 14        At Franchino's request, the Department investigated her charges that Schwartz had sexually harassed her, that AIGI was strictly liable for Schwartz's sexual harassment because he held a supervisory position at AIGI, that AIGI retaliated against her by subjecting her to unequal terms and conditions of employment, and that AIGI further retaliated against her by discharging her, all of which would constitute civil rights violations under the Act if proven. 775 ILCS 5/2-102(A), (D) (West 2022); see *Geise v. Phoenix Co. of Chicago*, 159 Ill. 2d 507, 518 (1994)

("Where an employee has been sexually harassed by supervisory personnel, *** the Act imposes strict liability on the employer, regardless of whether the employer knew of the offending conduct."). The Department found that these charges were supported by substantial evidence and filed separate complaints against Schwartz and AIGI in August 2018.

¶ 15    The first count in the complaint against AIGI included the following allegations of sexual harassment that Franchino found "unwelcome, unwanted, and offensive":

"(a) On or about September 15, 2016, Schwartz asked [Franchino] to give him a ride to a doctor's appointment in Madison, Wisconsin, and during that subsequent car ride, Schwartz told [Franchino], 'I will take care of you if you take care of me[.]' Also, during that car ride, Schwartz asked [Franchino] to be a stripper at an upcoming bachelor party that would be attended by his friends and clients, telling her that 'those men would hire her but she should make sure that no one knows that [Schwartz] would be there watching her[,]' and Schwartz put his hand on [Franchino's] thigh;

(b) On or about September 22, 2016, [Franchino] accompanied [Schwartz] and his daughter, Andrea Gunderman ("Gunderman"), to Madison, Wisconsin where Schwartz was scheduled for surgery. Prior to the surgery, Gunderson [*sic*] asked Schwartz for his credit card, and Schwartz stated that he would only give it to Gunderson if [Franchino] showed him her breasts. While on that same trip, Gunderson later showed [Franchino] a picture of Schwartz grabbing [Franchino's] boob while [Franchino] was sleeping in the hospital room;

(c) On or about September 29, 2016, while Schwartz was dropping [Franchino] off at a tire repair shop, Schwartz attempted to forcibly kiss [Franchino] on the lips as she was exiting the car;

(d) On or about October 11, 2016, Schwartz told [Franchino] that he would pay her overdue compensation, but said, '[Y]ou know you're going to have to work this off, don't you[?]' and informed her that she would have to go to his house and allow him to massage her;

(e) On or about October 14, 2016, Schwartz told [Franchino] that he would always take care of her financially if she treated him right and asked her not to sue him for sexual harassment;

(f) On or about October 25, 2016, Schwartz commented about [Franchino's] breasts in front of clients in the office;

(g) On at least one occasion in October 2016, Schwartz told third parties that [Franchino] was his girlfriend and asked her to accompany him to a Halloween party for swingers;

(h) On or about November 1, 2016, Schwartz told her that his son, Jim Schwartz, told Schwartz to pay [Franchino] off before she sues for sexual harassment;

(i) On or about November 2, 2016, Schwartz told the attendees at a breakfast meeting that [Franchino] was his girlfriend;

(j) On or about November 9, 2016, and on or about November 16, 2016, [Schwartz] called [Franchino] a 'hooker' in front of clients;

- 6 -

(k) Throughout [Franchino's] employment, Schwartz sold Viagra and Cialis in front of her and expected [Franchino] to sell Viagra and Cialis to clients; and

(*l*) Throughout [Franchino's] employment, when the phone would ring, Schwartz would state that it was his prostitutes wanting money."

¶ 16    The second count in the complaint against AIGI alleged that it had engaged in the following retaliation against Franchino for opposing Schwartz's sexual harassment:

"[F]rom on or about September 21, 2016, through on or about February 8, 2017, [AIGI] subjected her to unequal terms and conditions of employment in that: 1) Schwartz stopped the direct deposit of her paycheck on or about September 21, 2016, and on or about October 29, 2016; 2) [AIGI] stopped forwarding her client leads on or about November 23, 2016; 3) [AIGI] deleted her client list from the agency computer system on or about December 19, 2016; 4) [AIGI] instructed her to work from home and not to come into the office on or about January 23, 2017; and 5) [AIGI] refused to pay her using direct deposit on or about February 8, 2017[.]"

The third count alleged that AIGI had further retaliated against Franchino by discharging her on or about February 15, 2017.

¶ 17    In the complaint against AIGI, the Department's prayer for relief sought the following remedies that are relevant here:

"(a) That [AIGI] pay [Franchino] a sum equal to any loss of wages she may have suffered as a result of the civil rights violations committed against her by [AIGI];

(b) That [Franchino] be made whole as to all benefits and seniority status that would have accrued to her but for the civil rights violations committed against her by [AIGI];

(c) That [AIGI] pay to [Franchino] a sum equal to the damages she may have suffered because of embarrassment, humiliation, insult and emotional suffering as a result of the civil rights violations committed against her by [AIGI];

(d) That [AIGI] pay to [Franchino] reasonable attorney's fees and costs incurred as a result of the civil rights violations alleged herein;

* * *

(k) That such further relief be granted as may be necessary to make [Franchino] whole."

¶ 18    The complaint against Schwartz consisted of a single count of sexual harassment incorporating the same allegations above with minor changes in wording. *Supra* ¶ 15. The prayer for relief sought the following remedies:

"(a) That [Schwartz] pay to [Franchino] a sum equal to the damages she may have suffered because of embarrassment, humiliation, insult and emotional distress as a result of the civil rights violation committed against her by [Schwartz];

(b) That [Schwartz] pay to [Franchino] reasonable attorney's fees and costs incurred as a result of the civil rights violation alleged herein;

(c) That [Schartz] be referred to the Department's Human Rights Training Institute or similar training program to participate in such training as is necessary to prevent future civil rights violations; and

(d) That such further relief be granted as may be necessary to make [Franchino] whole."

¶ 19    The complaints were served on the employers via first-class mail to their attorney, Charles J. Prorok, who had appeared on behalf of the employers while Franchino's charges were pending with the Department. See 56 Ill. Adm. Code 5300.560(a) (2022) (providing that "[a]n appearance by *** counsel with the Department prior to issuance of the Complaint shall constitute an appearance before the Commission, except" in circumstances not present here).

¶ 20                    C. Proceedings Before the ALJ

¶ 21                        1. *Prehearing Proceedings*

¶ 22    The Commission opened a case for each complaint and assigned the cases to an ALJ (the prior ALJ), who scheduled a hearing in October 2018 at which both parties failed to appear without explanation. The prior ALJ scheduled a telephonic status hearing for May 21, 2019. The employers moved for the status hearing to be continued "to some other time that is convenient for the [prior ALJ] and the parties." Although the record does not reflect when this hearing was held, the prior ALJ entered an order on June 3, 2019, stating that "[t]hese causes c[ame] on to be heard on the parties' joint oral motion to consolidate" and that the motion was granted.

¶ 23    For reasons unclear from the record, the consolidated case then languished on the prior ALJ's docket for 32 months. In February 2022, the ALJ, recently assigned to the case, ordered the parties to file a joint status report by March 4, 2022, and to appear for a virtual status hearing on March 8, 2022. The order was sent by first-class mail to Prorok's office.

¶ 24    In lieu of a joint status report, Franchino filed a unilateral status report explaining that Prorok had died of liver cancer in late 2020 but that Franchino's counsel and Prorok had agreed that there would be no need for discovery in this strict liability matter. After receiving the

ALJ's order, Franchino's counsel contacted Schwartz to ask if he had obtained new counsel; Schwartz said that he had hired Alexander Loftus and provided Loftus's phone number. Franchino's counsel left a voicemail for Loftus but did not receive a response before filing the status report.

¶ 25    Franchino appeared at the virtual status hearing through her counsel, but neither Schwartz nor Loftus appeared. The ALJ subsequently entered an order (1) closing discovery, (2) directing AIGI to have an attorney appear on its behalf by March 22, 2022, because a corporate entity could not represent itself in the case, (3) directing the parties to submit a joint prehearing memorandum by April 22, 2022, and to submit any motions *in limine* by May 6, 2022, (4) setting a virtual prehearing conference for May 17, 2022, and (5) setting an in-person public hearing on liability and damages for May 25 and 26, 2022.

¶ 26    The order explained:

> "If a new attorney of record fails to enter an appearance on behalf of [AIGI] on or before March 22, 2022, or if either [employer] subsequently declines to participate in the preparation of materials necessary to satisfy any deadline contemplated by this order, I will entertain any appropriate motion from [Franchino] for a default judgment. If a default judgment is granted, the public hearing scheduled for May 25-26, 2022, will convert to a damages hearing for the purposes of assessing [Franchino's] damages."

¶ 27    The order was served on the employers via first-class mail to AIGI's address, although the ALJ also directed Franchino's counsel to provide a copy to the employers by e-mail if she had an e-mail address for Schwartz. All of the ALJ's future orders and all of Franchino's filings while the case was before the ALJ were mailed to AIGI's address.

¶ 28	No attorney entered a written appearance on AIGI's behalf by March 22, 2022. See *id.* (requiring an appearance to be in writing and served on all parties). On April 22, 2022, Franchino submitted a prehearing memorandum in accordance with the ALJ's standing order, in which Franchino's counsel explained that she had received no communication about the case from Schwartz or Loftus despite e-mailing the draft prehearing memorandum to Schwartz on April 20, 2022.

¶ 29	In the section of the prehearing memorandum directing the parties to provide an "[i]temization of damages and other relief sought, including a summary of attorney's fees and costs to date," Franchino sought the following remedies that are relevant here:

> "A. The [employers] pay to [Franchino] a sum equal to the damages she may have suffered because of embarrassment, humiliation, insult and emotional distress as a result of the civil rights violation committed against her by [the employers].
>
> Suggested: $200,000.00.
>
> * * *
>
> D. Lost wages: $45,000.00 per year x 2 years ($90,000.00).
>
> * * *
>
> K. Such further relief be granted as may be necessary to make [Franchino] whole."

The prehearing memorandum did not specifically mention an award of interest.

¶ 30	After reviewing the prehearing memorandum, the ALJ entered an order on April 29, 2022, stating:

"Because [the employers] have failed to substantially comply with my directives for the assembly of the prehearing memorandum—and because [the employers] have declined to substantively participate in this case in any other way—I am exercising my authority under 56 Ill. Admin. Code § 5300.710(b) to entertain a motion from [Franchino] for an order of default.

* * *

*** Where *** Schwartz fails to appear at the default judgment hearing, he will be subjected to an order of default, which means that all allegations of [Franchino's] complaint against *** Schwartz will be deemed to be true.

*** Similarly, where *** [AIGI] fails to appear at the default judgment hearing through counsel, the company will be subjected to an order of default, which means that all allegations of [Franchino's] complaint against [AIGI] will be deemed to be true.

*** While this order makes no finding as to the proper damages or attorneys' fees at issue, [the employers] are warned in the strongest possible terms that an order of default will foreclose the option to oppose or refute the allegations [Franchino] has made against them in this case."

¶ 31    The ALJ converted the prehearing conference to a default judgment hearing and stated that, if the ALJ issued a recommended order of default, the hearing on liability and damages would "focus solely and exclusively on the issue of damages and attorneys' fees." The ALJ ordered "[a]ll parties to this case (or their counsel) *** to be present by phone or by Webex" at the default judgment hearing.

¶ 32                                    2. *The Hearings*

¶ 33     Because the unusual nature of the default judgment hearing is central to this case, we reproduce the ALJ's narrative of the hearing in full:

"This consolidated sexual harassment case came before me for a default judgment hearing on May 17, 2022. [Franchino] appeared through counsel. An attorney by the name of Alexander Loftus (of the law firm of Loftus Eisenberg, Ltd.) appeared at the start of the hearing and announced to both this administrative court and [Franchino's] counsel that he represented [Schwartz and AIGI]. Mr. Loftus had not filed an appearance in this matter, although I took him at his word (as an officer of the court) that he represented both [employers]. This declaration by Mr. Loftus would later change as the hearing progressed (and as the matter became contentious).

* * *

As noted above, Mr. Loftus appeared at today's status hearing and advised both this administrative court and [Franchino's] counsel that he represented both [employers]. Despite not filing his appearance before the Commission, I took Mr. Loftus at his word and extended him the professional courtesy of allowing him to appear and speak for his clients. I did this because I assumed Mr. Loftus would file his appearance posthaste, and because a default judgment is 'drastic measure' that is typically only applied as a 'last resort.' [Citation.] Notwithstanding these concessions, I advised Mr. Loftus that this case was scheduled for a public hearing starting on May 25, 2022, at 9:30 a.m., and that his opponent had already submitted a sizable prehearing memorandum.

- 13 -

Mr. Loftus responded by stating that he was unable to appear for trial on May 25, 2022, and that because this matter had originally been scheduled for a public hearing that might last up to two days, he would prefer to begin the public hearing on May 26, 2022. I explained that this would not be possible for two reasons: (1) [Franchino's] counsel (assuming this matter would be uncontested) had already made arrangements to have her witnesses appear on May 25, 2022; and (2) if this matter was now going to be contested, the parties might need the two full days to hold their public hearing. While I would have been happy to allow [the employers'] counsel to present his own witnesses on May 26, 2022, the issue was that Mr. Loftus himself could not be present in court on May 25, 2022.

Bizarrely, Mr. Loftus then *asked* me to enter a default judgment against his clients, announcing that my entry of a default judgment (today) would better position him for the appeal he intended to file. When I questioned why any attorney would ever ask for a default judgment to be entered against his or her client, Mr. Loftus appears to have realized what he was requesting, as he immediately reminded all parties present that he had not filed an appearance in this matter (effectively suggesting that his lack of an appearance could subsequently exculpate his client from the request he had just made). In response, I informed Mr. Loftus that at the start of the hearing, he had expressly stated that he represented both [employers]. I further explained to Mr. Loftus that he had just consumed over 20 minutes of a hearing in which this administrative court and [Franchino's] counsel had relied on his word that he was authorized to speak for [the employers]. Mr. Loftus' response was simply, 'No, it's just like we're two guys talking here.'

At the conclusion of today's hearing, I informed Mr. Loftus that I would be entering a default judgment against both [employers]. If Mr. Loftus does not represent [them], then his presence at today's hearing is a nullity that resulted in neither [employer] participating in the proceeding. If Mr. Loftus does represent [them], then I find that he (as their attorney) affirmatively requested me to enter a default judgment against his clients. Either way, the entry of a default against [the employers] is appropriate. My decision is based not only Mr. Loftus' equivocation, but also on the fact that [the employers] have: (1) ignored every order issued by this administrative court to date; (2) failed to attend the last two status hearings; and (3) declined to willingly engage in any discussions with [Franchino's] counsel regarding the impending public hearing in this matter. The Illinois Human Rights Act authorizes an administrative law judge of this Commission to enter an order of default for failure to file required pleadings, failure to appear at a hearing, or failure to comply with a previous order of this administrative court. [Citation.] [The employers] are accountable for all three lapses in the instant case."

¶ 34    In a footnote, the ALJ added:

"It should be noted that despite engaging with any party to this case for the first time earlier today, Mr. Loftus has been aware of these proceedings for several months. [Franchino's] counsel explained at today's default judgment hearing that as early as March 3, 2022, *** Schwartz had advised that Mr. Loftus would be [the employers'] new attorney in these matters. But when [Franchino's] counsel attempted to contact Mr. Loftus by leaving him a voicemail, that message was never returned. This sequence of events was summarized in [Franchino's] prior status

- 15 -

report on March 4, 2022. [Citation.] I therefore find that Mr. Loftus had every opportunity to file his appearance and actively participate in these proceedings for months rather than reveal his existence one week before this case is scheduled to go to trial."

¶ 35    The ALJ entered the recommended order of default against both employers and deemed the facts pled in both complaints admitted as true.

¶ 36    At the public hearing on damages, the sole witness was Franchino, who testified about Schwartz's sexual harassment, AIGI's retaliation, and the impact that their conduct had on her. Franchino's testimony regarding the employers' conduct was consistent with the allegations in the complaints; in addition, she testified that Schwartz promised her that she would make at least $100,000 per year working at AIGI and that in 2017, she had taken out $17,500 in personal loans to make up for her lost income. Franchino's counsel stated that "in terms of the compensation for the humiliation, embarrassment, and emotional distress that Ms. Franchino has gone through, we'd ask for the maximum amount allowed under the law. We had suggested an amount of $200,000 in the prehearing memo."

¶ 37                    3. *Posthearing Proceedings*

¶ 38    After the hearing, the ALJ entered an order granting Franchino leave to file a posthearing brief before July 30, 2022, and providing that the employers could "seek leave (on or before August 15, 2022) to file responsive briefs," although no submissions would be accepted from AIGI except through an attorney who properly filed an appearance.

¶ 39    In Franchino's posthearing brief, she again provided itemized damages, stating that she found it "difficult to quantify the extreme, lasting, and continuing impact of the [employers'] conduct committed against her" but that she "request[ed] the sum of $200,000.00 to make her

whole and compensate for the embarrassment, humiliation, insult and emotion[al] distress she ha[d] endured as a direct result of the [the employers'] conduct." Franchino sought back pay, computed by subtracting her actual income from the $100,000 per year that the employers had promised her when she started at AIGI, up until the point in 2021 at which Franchino's actual income reached $100,000. Franchino's request included actual damages of $8,726.89 in interest that Franchino had paid on her personal loans. Franchino again failed to request an award of interest on back pay but "request[ed] such further relief be granted as may be necessary to make [her] whole." The employers did not respond to Franchino's posthearing brief.

¶ 40 The ALJ decided to issue a single ruling on both damages and attorney fees and ordered Franchino to file a petition for attorney fees by January 20, 2023, with the employers allowed to respond by February 10, 2023. In Franchino's petition for attorney fees, she specifically requested "that [the employers] be required to pay" both pre and postjudgment "interest applicable to the award of damages set forth in the Recommended Order and Decision and the Final Order." The employers did not respond to the petition.

¶ 41 The ALJ issued its recommended order and decision on February 17, 2023. The ALJ ultimately recommended that the Commission award Franchino (1) $305,804.30 in back pay, with pre and postjudgment interest computed according to the Commission's rule governing awards of interest (56 Ill. Adm. Code 5300.1145 (1996)), (2) $8,720.89 in actual damages for the interest on the personal loans Franchino had taken out because of the employers' conduct, (3) $325,000 in actual damages for humiliation, embarrassment, and emotional distress, (4) $33,332 in attorney fees, and (5) $423.54 in litigation costs—a total of $673,280.73 in monetary relief before interest. The ALJ assessed all of these remedies against both employers jointly and severally.

¶ 42                    D. Proceedings Before the Commission

¶ 43        On March 8, 2023, a new attorney filed an appearance on behalf of the employers and timely moved for a 15-day extension of time to file exceptions to the ALJ's recommended order and decision, representing that he had been retained on March 2, 2023. Over Franchino's objection, the Commission granted the motion.

¶ 44        The employers filed exceptions with the Commission, raising the issues we will address in the Analysis section. In their exceptions, counsel for the employers made several factual representations, including that "[w]hen Schwartz began receiving orders and notices from the Commission by mail, he forwarded them to Loftus without taking the time to determine the contents of the orders and notices." Although it is clear from the employers' exceptions that they intended to submit 18 documentary exhibits supporting these representations, it is also clear from Franchino's response to the exceptions that the exhibits were not served on her. Furthermore, the exhibits are absent from the record on review, which the Commission has certified is complete. See Ill. S. Ct. R. 324 (eff. July 1, 2017).

¶ 45        The employers also filed a "motion for leave to file supplemental exhibits to their exceptions." The supplemental exhibits consist of two photographs of Schwartz and Franchino that were taken by Andrea Gunderman on September 22, 2016, and provided to the employers' new counsel on April 28, 2023. In both photographs, Schwartz is lying in a hospital bed facing the camera with Franchino standing next to him. In one photograph, Franchino is posed kissing Schwartz's head with his hand on her breast; in the other, Franchino is bending down so that her smiling face is next to Schwartz's. The employers asserted that "[t]his is by no means sexual harassment" and that "[t]he photographs also call [Franchino's] credibility concerning her other

- 18 -

allegations of sexual harassment into serious question, as well as her claim that she has suffered resulting emotional distress warranting an award of $325,000."

¶ 46    A panel of the Commission denied the employers' motion and declined to review the ALJ's decision, making the ALJ's recommended order the order of the Commission. The Commission declined to grant the employers' petition for rehearing before the entire Commission.

¶ 47    E. Appellate Proceedings

¶ 48    The employers timely filed a petition for statutory direct review with this court. See 735 ILCS 5/3-113 (West 2022) (establishing the procedures for statutory direct review). On the employers' motion, the Commission stayed enforcement of its order pending review, conditioned on the filing of a bond in the amount of $875,000. See Ill. S. Ct. R. 335(g) (eff. July 1, 2017) (providing for such a stay).

¶ 49    Before filing their opening brief, the employers filed a motion with this court to supplement the record on review with the 18 exhibits they had attempted to submit, along with their exceptions. Franchino and the Commission objected on the basis that exhibits 4, 7, 8, 9, 11, and 13 were never filed with the Commission and the remaining 12 exhibits were copies of documents already in the record. Accordingly, we denied the motion. See Ill. S. Ct. R. 335(d) (eff. July 1, 2017) ("The entire record *before the administrative agency* shall be the record on review unless the agency and the [party seeking review] stipulate to omit portions." (Emphasis added.)); 735 ILCS 5/3-110 (West 2022) ("No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court.").

¶ 50    While briefing was pending, Schwartz passed away, so we granted the employers' unopposed motion to substitute the executor of Schwartz's estate for Schwartz. See Ill. S. Ct. R.

366(a)(2) (eff. Feb. 1, 1994) (providing that this court may allow substitution of a deceased party); Ill. S. Ct. R. 335(i)(1) (eff. July 1, 2017) (providing that Rule 366 is applicable to this proceeding insofar as appropriate). We note that none of the parties have suggested that Schwartz's death should affect our analysis of the issues in this appeal.

¶ 51                                    II. ANALYSIS

¶ 52                                A. Legal Standard

¶ 53         Although several aspects of proceedings before the Commission do resemble civil lawsuits, the parties in this administrative appeal have borrowed language and concepts from civil appeals a bit too freely, so we will first examine the applicable framework and then recast their arguments under that framework.

¶ 54                              1. *Remand vs. Review*

¶ 55         In this case, the ALJ made factual findings and recommended based on those findings that (1) the Commission should enter a default against the employers and (2) the Commission should award Franchino monetary relief that included interest and $325,000 in damages for emotional distress. Once the ALJ filed the recommended order with the Commission, the hearing record was closed and the ALJ's role was fulfilled. See *McQueary*, Ill. Hum. Rts. Comm'n Rep. 1996CF0009, 1998 WL 937866, at *8 (Nov. 20, 1998) ("We review the Recommended Order and Decision in light of the evidence presented to the Administrative Law Judge at the hearing."); see also 56 Ill. Adm. Code 5300.530(b) (1996) ("The Administrative Law Judge shall rule on all proper motions and objections by any party from the time the Judge is assigned the matter *** until the Judge's recommended decision and/or Final Order is filed with the Commission or issued to the Parties.").

¶ 56 If the employers were dissatisfied with the hearing record as it stood at that time, their remedy was to file a written request for the Commission to remand the case to the ALJ for the purpose of hearing additional evidence. 775 ILCS 5/8A-103(D)(1) (West 2022). The Commission has established the following procedure for such a request:

"[The] request shall be supported by a statement specifying in detail the evidence which [the party] proposes to present, its relevance, and the reasons why such evidence was not presented at the hearing. A request to present additional evidence shall be granted by the Commission or a three-member panel only if it determines that substantial justice so requires. In general, such a request will be viewed with disfavor by the Commission." 56 Ill. Adm. Code 5300.1010 (1985).

¶ 57 Alternatively, on the existing hearing record, the employers could have "file[d] with the Commission any written exceptions to any part of the order," "supported by argument and served on all parties." 775 ILCS 5/8A-103(A) (West 2022); 56 Ill. Adm. Code 5300.920 (1992). They could also have filed a written request for a rehearing of all or any portion of the evidence in the existing hearing record "before the same or a different Administrative Law Judge," "supported by a statement of the reasons why [they] believe[d] that a rehearing [wa]s necessary." 56 Ill. Adm. Code 5300.1020 (1985); 775 ILCS 5/8A-103(D)(1) (West 2022); see *Barnes*, Ill. Hum. Rts. Comm'n Rep. 1988CN2251, 1992 WL 722709 at *1 (Dec. 23, 1992) (noting that a party bringing such a motion faces a "very heavy burden").

¶ 58 The employers could not, however, expand the hearing record by submitting new exhibits directly to the Commission in conjunction with their exceptions. See *Chen*, Ill. Hum. Rts. Comm'n Rep. 1986CF1519, 1998 WL 603519, at *5 (July 24, 1998) ("We are not the finders of fact. That is the role of the Administrative Law Judge."); *Irick v. Illinois Human Rights Comm'n*,

311 Ill. App. 3d 929, 935 (2000) ("Findings of fact made at the administrative level are those made by the ALJ, except for those which the Commission has found to be contrary to the manifest weight of the evidence."). In the absence of a proper request to present additional evidence, the Commission is entitled to disregard such exhibits and any allegations based on them, as it has done in prior cases. See, *e.g.*, *McQueary*, Ill. Hum. Rts. Comm'n Rep. 1996CF0009, 1998 WL 937866, at *8 (Nov. 20, 1998); *Simmons*, Ill. Hum. Rts. Comm'n Rep. 1996CF2705, 1998 WL 834687, at *4 (Sept. 2, 1998); *Chen*, Ill. Hum. Rts. Comm'n Rep. 1986CF1519, 1998 WL 603519, at *5 (July 24, 1998).

¶ 59                                    2. *The Employers' Request for Review*

¶ 60          Here, the employers attempted to submit six new exhibits in conjunction with their exceptions, but those exhibits were never served on Franchino or filed with the Commission, so the exhibits themselves clearly formed no part of the Commission's decision, nor are they a part of the record on review. See Ill. S. Ct. R. 335(d) (eff. July 1, 2017) ("The entire record before the administrative agency shall be the record on review unless the agency and the [party seeking review] stipulate to omit portions."). Accordingly, the exhibits themselves will not be considered on review before this court. See *Lipscomb v. Housing Authority of the County of Cook*, 2015 IL App (1st) 142793, ¶ 11 ("When a court reviews the decision of an administrative agency, the court must review only the record of the administrative proceedings." (Internal quotation marks omitted.)).

¶ 61          That said, the employers' unsupported allegations regarding Schwartz's lack of knowledge do appear in the record, and the Commission's procedural rules do not explicitly impose an affidavit requirement for exceptions. Compare 56 Ill. Adm. Code 5600.920 (1992) (providing that written exceptions must be "supported by argument"), with 56 Ill. Adm. Code

5300.765(a) (1996) (providing that a petition for fees and/or costs must be "supported by argument and affidavits"). Moreover, it appears from the Commission's precedents that it will consider new allegations made in exceptions to a recommended order of default, although it is unclear whether the Commission requires those allegations to be supported by an affidavit or exhibit. See, *e.g.*, *Perry*, Ill. Hum. Rts. Comm'n Rep. 1990CN2389, 1995 WL 714296, at *1 (June 29, 1995) (setting aside a recommendation of default when "[t]he respondent, in his exceptions, argue[d] that he was wrongly held in default"); *Prince*, Ill. Hum. Rts. Comm'n Rep. 1996CF2534, 1997 WL 377153, at *1 (May 5, 1997) (declining to set aside a recommendation of default based on the respondent's "assert[ion] that notice of this pending proceeding was concealed by a former employee"); see also *Wheeler*, Ill. Hum. Rts. Comm'n Rep. 1993SF0540, 1995 WL 716896, at *1 (July 12, 1995) (declining to set aside a notice of default by the Department when "[t]he owner of the respondent ha[d] submitted an affidavit which state[d] that he personally did not receive notices from the Department").

¶ 62        It would behoove the Commission to establish a clear policy regarding the allegations and materials it will consider when a respondent files exceptions to a recommended order of default. When the Commission grants a request to set aside a recommended order of default, the Commission is essentially granting a remand "for purposes of a rehearing to reconsider evidence or hear additional evidence in the matter," and must "issue and serve on all parties a written order remanding the cause and specifying the additional evidence." 775 ILCS 5/8A-103(D)(1) (West 2022). To specify the additional evidence, the Commission must have some idea of what that evidence will be, so it makes sense for the Commission to consider additional materials or unsupported allegations in reaching its decision.

¶ 63    In contrast, when the Commission denies a request to set aside a recommended order of default, it must still "decide whether to accept the case for review," and if it does, it must "adopt the [ALJ's] findings of fact if they are not contrary to the manifest weight of the evidence." *Id.* § 8A-103(E)(1)-(2). Assuming without deciding that the Commission would be entitled to deny review based on factual allegations that were never before the ALJ, our own review would nevertheless be hindered in such circumstances because the Commission's reasoning and the ALJ's reasoning would not truly be the same. Therefore, we caution the Commission against collapsing these two inquiries into one. See, *e.g.*, *French*, Ill. Hum. Rts. Comm'n Rep. 2007CN0661, 2008 WL 5611701, at *1 (Aug. 5, 2008) (referring to "exceptions, in the form of a motion to vacate the order of default and the recommended order and decision").

¶ 64    In any event, the issue is academic here because the employers' unsupported allegation that Schwartz lacked actual knowledge of the proceedings is irrelevant, as we will explain and as the Commission has recognized in prior cases. See, *e.g.*, *Wheeler*, Ill. Hum. Rts. Comm'n Rep. 1993SF0540, 1995 WL 716896, at *1 (July 12, 1995) ("The owner of the respondent has submitted an affidavit which states that he personally did not receive notices from the Department of Human Rights concerning the fact-finding conference. The representations made by the owner do not indicate, however, that the said notices were not properly served on the respondent. Accordingly, the respondent's motion to vacate default is denied.").

¶ 65                    3. *The Employers' Request for Remand*

¶ 66    In addition to attempting to attach 18 exhibits to their exceptions, the employers also filed a motion to supplement the record with two additional exhibits, which the Commission denied. As a result, those two exhibits are not a part of the *hearing record* on which the Commission based its findings of fact (see 5 ILCS 100/10-35(c) (West 2022); 56 Ill. Adm. Code

- 24 -

5300.760(b) (1996)), but they were properly included in the *record on review* for the limited purpose of enabling this court to determine whether the Commission's denial of the employers' motion was erroneous, akin to an offer of proof, which "enables a reviewing court to determine whether exclusion of the [proffered] evidence was proper." *People v. Way*, 2017 IL 120023, ¶ 33; see 5 ILCS 100/10-35(a)(4) (West 2022) ("The record in a contested case shall include *** [a]ny offers of proof, objections, and rulings thereon."). That said, we agree with Franchino and the Commission's view that the reproduction of these images in the employers' opening brief was gratuitous, so we strike them. Rather than require the employers to refile their brief without the offending images, however, we simply admonish counsel that an "appropriate reference to the pages of the record on appeal" will ensure this court's review of the referenced exhibits. Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020).

¶ 67                                    4. *The Employers' Argument*

¶ 68        Properly construed, the employers' challenge to the Commission's decision is an argument that the Commission abused its discretion by (1) adopting the ALJ's recommendation of default, (2) adopting the ALJ's recommended award of interest and $325,000 in damages for emotional distress, and (3) denying the employers' motion to present additional evidence. We address these issues in turn.

¶ 69                            B. The Commission's Order of Default

¶ 70        The Act provides that

> "[t]he [ALJ] may issue *** a recommended order of default as a sanction for the failure of a party to prosecute [the party's] case, file a required pleading, appear at a hearing, or otherwise comply with this Act, the rules of the Commission, or a previous order of the [ALJ]." 775 ILCS 5/8A-102(I)(6) (West 2022).

- 25 -

¶ 71    The Commission has supplemented this section of the Act with two procedural rules that are relevant here. See *Chicago Transit Authority v. Department of Human Rights*, 169 Ill. App. 3d 749, 753 (1988) (noting that an administrative agency has "authority to regulate and execute the provisions of the statute and to carry out the powers conferred upon it"). Section 5300.710(b) of the Illinois Administrative Code provides:

> "Should a party fail substantially to comply with the directions set out for the pre-hearing memorandum or fail to appear at a scheduled pre-hearing conference, the Administrative Law Judge, on motion, may file a recommendation of *** default *** or other appropriate Order imposing sanctions as justice may require." 56 Ill. Adm. Code 5300.710(b) (1996).

Section 5300.750(e) provides:

> "Should a Party fail to appear at a scheduled hearing without requesting a continuance reasonably in advance, or unreasonably refuse to comply with any Order entered under this Part, or otherwise engage in conduct which unreasonably delays or protracts proceedings, the Administrative Law Judge may file a recommendation of dismissal with prejudice or default or other appropriate Order imposing sanctions as justice may require, including requiring the offending Party or attorney to pay the reasonable expenses and attorney's fees incurred by any other Party as a result of the misconduct." 56 Ill. Adm. Code 5300.750(e) (1998).

These rules are controlling on the Commission. See *Tolliver v. Housing Authority of the County of Cook*, 2017 IL App (1st) 153615, ¶ 33.

¶ 72    Although the Act and the Administrative Code expressly authorize the ALJ to recommend a default for (1) a failure to substantially to comply with the directions set out for the

prehearing memorandum, (2) a failure to appear at a scheduled prehearing conference, or (3) several forms of unreasonable conduct, the employers argue that a higher showing was necessary before the ALJ could recommend a default, namely, that their "conduct showed a deliberate, contumacious, or unwarranted disregard for the ALJ's authority." *MIFAB, Inc. v. Illinois Human Rights Comm'n*, 2020 IL App (1st) 181098, ¶ 47. When this quote is viewed in context, it is clear that *MIFAB* stands for no such thing:

> "*Although we believe that the [Administrative] Code expressly authorized the Commission to enter a default against [the respondent]*, if we were to apply Rule 219(c) to the facts of this case, we would still find that the Commission did not err by entering default against [the respondent] because its conduct showed a deliberate, contumacious, or unwarranted disregard for the ALJ's authority." (Emphasis added.) *Id.*

Nevertheless, we will follow *MIFAB*'s lead and address both the Administrative Code and this higher standard because the result will be the same either way. As explained in *MIFAB*,

> "we review the Commission's decision to adopt the ALJ's recommendation to enter a default as a sanction against [a respondent] under an abuse of discretion standard. [Citation.] A sanction will be found to be an abuse of discretion if it is arbitrary and capricious, or if the sanction is overly harsh in view of the mitigating circumstances. [Citation.]" (Internal quotation marks omitted.) *Id.* ¶ 41.

¶ 73        Here, the employers do not dispute that *Loftus* failed substantially to comply with the directions set out for the prehearing memorandum, failed to attend hearings, and failed to enter a written appearance on the docket as required by the Commission's rules and the ALJ's order. Instead, the employers argue that Loftus's misconduct should not be held against *them* because

they reasonably believed that Loftus was handling the matter on their behalf. Because the employers' conduct was reasonable, they argue, sanctions against them were improper under any of the standards above. See 56 Ill. Adm. Code 5300.710(b) (1996); 56 Ill. Adm. Code 5300.750(e) (1998); *MIFAB*, 2020 IL App (1st) 181098, ¶ 47.

¶ 74            The problem with this argument is that the filings in the case were being served on *the employers themselves*, not Loftus, and the employers have never alleged that they failed to receive those filings. While the employers may have believed that Loftus was handling the case on their behalf, that belief was no longer reasonable after they received the April 29, 2022, order in which the ALJ stated that no one acting on their behalf had substantively participated in the case in any way. At that point, they had been notified that Loftus was utterly failing to represent them, so when they sent him to represent them at the May 17, 2022, hearing, they ran the obvious risk that he would again fail to attend, file an appearance, advocate for their interests, substantively participate in the case, or otherwise show respect for the ALJ's authority. Loftus's behavior at the hearing, while bizarre, was par for the course.

¶ 75            The employers argue that their belief was nevertheless reasonable because Schwartz forwarded the letter to Loftus without reading it, meaning the employers lacked *actual knowledge* of Loftus's misconduct. The chief problem with this argument is that it would enable employers to escape responsibility for sexual harassment by refusing to open mail from the Commission. See *CitiMortgage, Inc. v. Lewis*, 2014 IL App (1st) 131272, ¶ 39 (" 'If the proper giving of the notice can now be frustrated by the mere allegation of the defendant that he did not receive it, then the giving of notice by mail cannot be relied upon even though the rules specify such a method.' " (quoting *Bernier v. Schaefer*, 11 Ill. 2d 525, 529 (1957))). Requiring a claimant

seeking a default to prove that a notice was not just *delivered* but also *opened and read* would create an insurmountable obstacle to obtaining relief.

¶ 76         Even if actual knowledge were the standard, however, we would sustain the Commission's finding of actual knowledge unless it was clearly evident from the record that the employers lacked actual knowledge of Loftus's misconduct. The evidence overwhelmingly suggests that the employers had actual knowledge: the ALJ had certificates of service of the prior filings from Commission staff and Franchino's counsel; statements from Franchino's counsel that she had reached Schwartz by phone, Loftus was his attorney, she left Loftus a voicemail, and she sent Schwartz an e-mail; and statements from Loftus that he represented the employers. Assuming the employers' unsupported allegations of Schwarz's ignorance were a proper subject for the Commission's consideration, the Commission was free to conclude that they did not warrant setting aside the ALJ's recommendation of default. See *Wheeler*, Ill. Hum. Rts. Comm'n Rep. 1993SF0540, 1995 WL 716896, at *1 (July 12, 1995).

¶ 77         Ultimately, the employers' argument boils down to a claim that Loftus's conduct at the hearing was so bizarre, and his representation so patently deficient, that the ALJ should have *inferred* from Loftus's conduct alone that the employers "could not have known that Loftus would request that a default order enter against [them] and then retract the request and deny that he represented them." But this request, retraction, and denial came only after Loftus attempted to delay the hearing on the employers' behalf. The ALJ could just as easily have inferred that Loftus's bizarre conduct was part of a calculated effort by the employers to test the waters and comply with the ALJ's order only if it favored them—in other words, another example of their deliberate, contumacious, and unwarranted disregard for the ALJ's authority. "Where the evidence permits

multiple reasonable inferences, the reviewing court will accept those inferences that support the *** order." *In re Marriage of Bates*, 212 Ill. 2d 489, 516 (2004).

¶ 78 Indeed, the employers fail to suggest what alternative course of action the ALJ should have taken in response to Loftus's bizarre conduct. The implication of their argument seems to be that the ALJ should have contacted the employers directly and informed them that their attorney, if he even was their attorney, was incompetent. This course of action might have been appropriate if there had been some indication that the employers were unaware of Loftus's actions so far, say if prior notices had been served on Loftus instead of the employers themselves. See *Jacobson v. Ashkinaze*, 337 Ill. 141, 148 (1929) ("[A] party is not chargeable with notice to an attorney when the relation of attorney and client does not exist between them."). But the ALJ had already communicated with the employers directly about Loftus's conduct; the ALJ was under no obligation to afford them another prehearing conference at which they could again disregard the ALJ's authority.

¶ 79 In short, the Commission's adoption of the ALJ's recommendation of default was not arbitrary and capricious or unduly harsh in light of the mitigating circumstances. See *MIFAB*, 2020 IL App (1st) 181098, ¶ 47.

¶ 80 C. The Commission's Authority to Award the Chosen Remedies

¶ 81 The employers raise several challenges to the Commission's award of interest and damages for emotional distress. The employers' argument on this point, while perfunctory, blends three different issues, one of which goes to the Commission's discretion, which we examine in a later section. The other two issues go to the Commission's authority, namely, (1) whether the Commission denied the employers their constitutional right to due process of law and (2) whether the Commission exceeded its statutory authority in awarding the remedies in this case.

¶ 82                                    1. *Due Process*

¶ 83          It is well established that "[a]dministrative hearings, like judicial proceedings, are governed by fundamental principles and requirements of due process." *Scatchell v. Board of Fire & Police Commissioners for Melrose Park*, 2022 IL App (1st) 201361, ¶ 116. "Whether an administrative hearing complied with due process is a question of law [that] will be reviewed *de novo*." *MIFAB*, 2020 IL App (1st) 181098, ¶ 81.

> "In administrative hearings, due process of law specifically requires a definite charge, adequate notice, and a full and impartial hearing. [Citation.] That said, charges in administrative proceedings do not need to be as precisely worded as the pleadings in a judicial proceeding, provided the respondent is adequately advised of the charges so that he may intelligently prepare a defense." *Scatchell*, 2022 IL App (1st) 201361, ¶ 120.

"Adequacy of notice is determined by whether the party receiving notice should have anticipated the effects and orders possible under an adverse ruling." *Florsheim Shoe Co. v. Illinois Fair Employment Practices Comm'n*, 99 Ill. App. 3d 868, 871 (1981); see *Grimm v. Calica*, 2015 IL App (2d) 140820, ¶ 15, *aff'd*, 2017 IL 120105 ("[D]ue process mandates notice sufficient to allow the person whose interest is at risk to decide how to respond.").

¶ 84          With respect to notice that the Commission might award interest, the employers focus on the complaints, but this focus is myopic. "In determining whether [a party] has adequate notice of charges brought by an administrative agency, 'the court may consider the discovery and other materials available to the [party].' " *Morgan v. Department of Financial & Professional Regulation*, 388 Ill. App. 3d 633, 666 (2009) (quoting *Siddiqui v. Department of Professional Regulation*, 307 Ill. App. 3d 753, 760 (1999)). Here, the employers were properly served by mail

with Franchino's petition for fees and costs seeking interest and the ALJ's order stating that the employers could file written objections to that petition. Even if the employers failed to actually read these documents, they had constitutionally sufficient notice of their contents. See *CitiMortgage*, 2014 IL App (1st) 131272, ¶ 39 (explaining that notice is satisfied by the use of regular mail even if the recipient fails to receive actual notice); see also *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490 (1988) ("We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice.").

¶ 85    The Commission's publicly available procedural rules provided the employers notice of the formula by which an award of interest would be calculated (56 Ill. Adm. Code 5300.1145 (1996)) and allowed for the employers to request additional time to respond, if necessary, and to seek a hearing where the ALJ could "resolve contested issues and *** take other steps to produce a complete record" (56 Ill. Adm. Code 5300.765(d)-(e) (1996)). See *Mercury Sightseeing Boats, Inc. v. County of Cook*, 2019 IL App (1st) 180439, ¶ 89 ("[D]ue process does not require the government to explain the available remedies or procedures to internally challenge an administrative action, as long as those remedies are provided in publicly available sources such as statutes, rules, or the like." (citing *City of West Covina v. Perkins*, 525 U.S. 234, 240-41 (1999), and *M.A.K. Investment Group, LLC v. City of Glendale*, 897 F.3d 1303, 1318-19 (10th Cir. 2018))).

¶ 86    As such, the employers received notice that an award of interest was possible, and they were afforded a meaningful opportunity to respond to Franchino's request for interest, including by arguing that interest had not been specifically requested in the Department's complaints. " 'Due process is not denied when a party fails to avail himself of the opportunity to be heard after it is offered to him.' " *Zale v. Moraine Valley Community College*, 2019 IL App

(1st) 190197, ¶ 39 (quoting *In re E.L.*, 152 Ill. App. 3d 25, 33 (1987)); see *MIFAB*, 2020 IL App (1st) 181098, ¶ 81 ("The law is clear. There is no due process violation in an administrative agency proceeding where the negligence or intentional conduct of a party results in *** the entry of a default judgment against the party.").

¶ 87        With respect to Franchino's suggestion in the prehearing memorandum that she be awarded $200,000 in damages for emotional distress, the question is whether the employers had adequate notice that if they failed to participate in the damages hearing or file a posthearing brief, a greater award of damages was still possible. See *Florsheim Shoe*, 99 Ill. App. 3d at 871. Here again, we find that the notice was adequate; Franchino's language was equivocal, and a suggestion is by definition a nonbinding proposal. See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/suggest (last visited Dec. 4, 2024) [https://perma.cc/FQ7C-ZSQB] (defining "suggest" as "propose as desirable or fitting"). For that matter, a prehearing memorandum is only an administrative convenience for the Commission (see 56 Ill. Adm. Code 5300.710(a) (1996)); to treat a suggestion of relief in the prehearing memorandum as controlling over the prayer for relief in the complaint would render the suggestion a *de facto* amendment to the complaint, circumventing the statutory process for making such amendments. 775 ILCS 5/8A-102(C) (West 2022); see 56 Ill. Adm. Code 5300.650 (1996). The employers not only had an opportunity to argue that the $200,000 suggestion was excessive, they could have also asserted that the $200,000 "suggestion" should be treated as a suggestion that no more than $200,000 would be appropriate. They did neither.

¶ 88        In sum, we find that the employers were given adequate notice that the Commission might award interest and additional damages for emotional distress, and the employers had a meaningful opportunity to be heard on these remedies before they were awarded. The employers'

failure to avail themselves of that opportunity, whether negligent or intentional, was not a denial of due process.

¶ 89                                    2. *Statutory Authority*

¶ 90        The employers argue that notice and an opportunity to be heard were not enough and that the Commission lacks the statutory authority to award remedies against a defaulting party unless those remedies are specifically requested in the complaint. Although the employers focus only on interest, we must broaden the inquiry slightly because of our independent duty to consider whether the Commission exceeded its statutory authority, also known as its jurisdiction. *Gilchrist v. Human Rights Comm'n*, 312 Ill. App. 3d 597, 600 (2000); see *Delgado v. Board of Election Commissioners of Chicago*, 224 Ill. 2d 481, 485 (2007) ("Any action or decision taken by an administrative agency in excess of or contrary to its authority is void."). We first address the scope of the Commission's authority under the Act and then consider whether the agency exceeded that authority by awarding the remedies in this case. We review *de novo* whether an agency exceeded its statutory authority. *Gilchrist*, 312 Ill. App. 3d at 602.

¶ 91                              a. The Complaint Requirement

¶ 92        "An administrative agency, such as the Commission, obtains its power to act from the legislation creating it and its power is strictly confined to that granted in its enabling statute." *Id.* at 601. There is no dispute that the relief awarded in this case falls within the legislature's express grant of authority for the Commission to remedy civil rights violations. See 775 ILCS 5/8A-104 (West 2022); *Village of Bellwood Board of Fire & Police Commissioners v. Human Rights Comm'n*, 184 Ill. App. 3d 339, 355 (1989) (noting that section 8A-104 of the Act authorizes damages for emotional distress). *Contra Crittenden v. Cook County Comm'n on Human Rights*, 2013 IL 114876, ¶ 34 (finding that the Cook County Commission on Human Rights had no

authority to award punitive damages absent express authorization by the legislature or the Cook County Board). However, an agency's statutory authority can be subject to procedural as well as substantive constraints. See *Walsh v. Champaign County Sheriff's Merit Comm'n*, 404 Ill. App. 3d 933, 940 (2010) (finding that an administrative agency "exceeded its statutory authority by entering an order *** dismissing the charges *** without considering, in any manner, the merits or substance of the charges"). Here, the question is more procedural than substantive, namely, is the Commission authorized to award remedies against a defaulted party when those remedies were not specifically requested in the complaint?

¶ 93          The Act provides:

"When the complainant requests that the Department file a complaint with the Commission on his or her behalf, the Department *shall prepare a written complaint, under oath or affirmation, stating* the nature of the civil rights violation substantially as alleged in the charge previously filed and *the relief sought on behalf of the aggrieved party*." (Emphases added.) 775 ILCS 5/7A-102(F)(1) (West 2022).

The Act also establishes a specific procedure for amending complaints:

"(1) A complaint may be amended under oath by leave of the presiding [ALJ], for good cause shown, upon timely written motion and reasonable notice to all interested parties at any time prior to the issuance of a recommended order pursuant to Section 8A-102(I) or 8B-102(J). The amended complaint shall be served upon all parties of record and the Department of Human Rights by the complainant, or by the Department if it prepared and filed the amended complaint, within 7 days of the date of the order permitting its filing or such additional time as the [ALJ] may order. Amendments to the complaint may encompass any unlawful

- 35 -

discrimination which is like or reasonably related to the charge and growing out of the allegations in such charge, including, but not limited to, allegations of retaliation.

(2) A motion that the complaint be amended to conform to the evidence, made prior to the close of the public hearing, may be addressed orally on the record to the hearing officer, and shall be granted for good and sufficient cause." *Id.* § 8A-102(C).

¶ 94 When making a decision on the merits, the ALJ must "determine whether the respondent has engaged in or is engaging in the civil rights violation with respect to the person aggrieved *as charged in the complaint*. A determination sustaining a complaint shall be based upon a preponderance of the evidence." (Emphasis added.) *Id.* § 8A-102(I)(1). "The [ALJ] shall make findings of fact in writing and, if the finding is against the respondent, shall issue and cause to be served on the parties and the Department a recommended order for *appropriate relief* as provided by this Act." (Emphasis added.) *Id.* § 8A-102(I)(2). The Act provides, "*Upon finding a civil rights violation*, [an ALJ] may recommend and the Commission or any three-member panel thereof may provide for *any relief or penalty identified in this Section*, separately or in combination ***.*" (Emphases added.) *Id.* § 8A-104.

¶ 95 Putting these sections together suggests that the remedies requested in the complaint do not limit the remedies available when a case is adjudicated on the merits. See 56 Ill. Adm. Code 5300.760(e)(1) (1996) (adopting this approach). Section 2-604.2(a), (c) of the Code of Civil Procedure establishes a similar rule for civil lawsuits (735 ILCS 5/2-604.2(a), (c) (West 2022)):

"(a) *** [E]very count in every complaint and counterclaim must request specific remedies the party believes it should receive from the court.

* * *

(c) Except in the case of default, the remedies requested from the court do not limit the remedies available. Except in the case of default, if a party seeks remedies other than those listed in the complaint or counterclaim, the court may, by proper order, and upon terms that may be just, protect the adverse party against prejudice by reason of surprise.

In the case of default, if a remedy is sought in the pleading, whether by amendment, counterclaim, or otherwise, that is beyond what the defaulted party requested [*sic*], notice shall be given to the defaulted party as provided by Illinois Supreme Court Rule 105 [(eff. Jan. 1, 2018)]."

¶ 96 However, the Act is silent on the remedies available in the case of default. *Contra id.* To the extent the Act addresses remedies in general, it is at best ambiguous on this point. To be sure, the ALJ is expressly authorized to issue "a recommended order of default as a sanction" when it finds a party has failed to "comply with th[e] Act, the rules of the Commission, or a previous order of the [ALJ]" (775 ILCS 5/8A-102(I)(6) (West 2022)), and the ALJ may issue "a recommended order for appropriate relief" (see *id.* § 8A-102(I)(2)). However, it is not exactly the case that the ALJ's recommended order of default constitutes "[a] determination sustaining a complaint" (*id.* § 8A-102(I)(1)) or a "finding [of] a civil rights violation" (*id.* § 8A-104).

¶ 97 Therefore, the question of what constitutes "appropriate relief" in the case of a default could arguably mean either (1) the remedy is appropriate because it is authorized by section 8A-104 of the Act or (2) the remedy is appropriate to the case because it is both authorized by the

Act and was specifically requested in the complaint. As such, the statute is ambiguous. See *Miller v. Department of Agriculture*, 2024 IL 128508, ¶ 30 ("A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more ways.").

¶ 98                            b. Constitutional Avoidance

¶ 99            To determine which of these interpretations is correct, we turn to the canon of constitutional avoidance. The Illinois Supreme Court's "long-standing rule is that 'cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort.' " *The Carle Foundation v. Cunningham Township*, 2017 IL 120427, ¶ 34 (quoting *In re E.H.*, 224 Ill. 2d 172, 178 (2006)). This canon "rest[s] on the reasonable presumption that [the legislature] did not intend the [interpretation] which raises serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381 (2005). Employing this canon here, we conclude that "appropriate relief" in the case of a default includes only those remedies that are both authorized by the Act and specifically requested in the complaint, either as initially filed under section 7A-102(F)(1) or by an amendment in accordance with section 8A-102(C).

¶ 100            It is true that the pleading and notice requirements of section 2-604.2 of the Code of Civil Procedure do not apply to administrative proceedings and that "charges in administrative proceedings do not need to be as precisely worded as the pleadings in a judicial proceeding, provided the respondent is adequately advised of the charges so that he may intelligently prepare a defense." *Scatchell*, 2022 IL App (1st) 201361, ¶¶ 116-117, 120. However, the rule that a plaintiff should recover only the relief requested in its complaint has its roots in the "fundamental principles and requirements of due process." *Id.* ¶ 116; see *Klehm v. Klehm*, 41 Ill. App. 2d 423, 427 (1963) ("It is fundamental in our system of jurisprudence that a defendant is entitled to know the precise charge that is laid at his door, the nature and the extent of the relief sought, the property

that is or may be affected and an opportunity to be heard."). Indeed, a key component of "intelligently prepar[ing] a defense" is knowing what is at stake if no defense is prepared at all. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (" 'The fundamental requisite of due process of law is the opportunity to be heard.' [Citation.] This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.").

¶ 101　　　　Therefore, section 2-604.2 of the Code of Civil Procedure provides a mechanism for ensuring the defendant's right to due process is satisfied in a civil case. *Cf. In re Genesys Data Technologies, Inc.*, 18 P.3d 895, 900 (Haw. 2001) (noting that a similar rule limiting relief in the cases of default "implicates the defendant's right to due process"). We conclude that the Act's requirement for a complaint to state the relief sought on behalf of the aggrieved party, along with the specific notice requirements for amendments to the complaint, were similarly intended to ensure the respondent's right to due process is satisfied in administrative proceedings. *Cf. Ryan v. Miller*, 58 Ill. App. 3d 283, 286 (1978) ("Although [section 2-604.2] is not applicable to small claims cases in specific terms, it sets forth a principle of justice and fairness which should be equally applicable to small claims.").

¶ 102　　　　Finally, we note that although the employers here received constitutionally adequate notice and an opportunity to be heard on the remedies awarded against them in this case, that fact alone does not mean that the Act should be interpreted to authorize an award of relief beyond what is requested in the complaint. *Clark*, 543 U.S. at 380-81 ("If one [plausible statutory construction] would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the [c]ourt.").

We express no opinion as to whether such an approach would be consistent with due process if the legislature had chosen to pursue it.

¶ 103                                    c. The Present Case

¶ 104         Having concluded that the prayer for relief in the complaint limits the relief available, we find that the validity of an award of relief should be determined by a fair reading of the complaint, "in view of the nature of the [allegation] pleaded, the notice in the complaint [of the award] being sought, and the size of the final award." *Kaput v. Hoey*, 124 Ill. 2d 370, 382 (1988).

¶ 105         With respect to the complaint against Schwartz, the nature of the allegation is sexual harassment. Nothing in the complaint mentions Franchino's discharge or subsequent loss of pay, and the prayer for relief does not mention back pay or the interest on Franchino's personal loans. Even under the most liberal reading of the complaint, we find that it fails to provide notice that the Commission might find Schwartz jointly and severally liable for the loan interest or an award of back pay with or without interest. Because the Commission exceeded its statutory authority by awarding these remedies in the absence of a request, we vacate its finding of liability as to Schwartz only. See *Crittenden*, 2013 IL 114876, ¶ 1 (overturning the portion of an award not authorized by statute).

¶ 106         Turning to the complaint against AIGI, Franchino's allegation of retaliation clearly contemplates an award of back pay, which she specifically requests, although no specific mention is made of Franchino's personal loans. However, Franchino's general prayer for relief takes its language directly from the language of the Act, which provides that the Commission may "[t]ake such action as may be necessary to make the individual complainant whole, *including*, but not

limited to, *awards of interest on the complainant's actual damages and backpay from the date of the civil rights violation*." (Emphases added.) 775 ILCS 5/8A-104(J) (West 2022).

¶ 107      While in civil cases, it may be that a general prayer for unlimited "further relief" is insufficiently specific in the case of a default (see *Safety-Kleen Corp. v. Canadian Universal Insurance Co.*, 258 Ill. App. 3d 298, 305-06 (1994)), in this administrative proceeding, we find that despite the complaint's failure to include the emphasized language above, AIGI was afforded adequate notice that it might be assessed awards of interest. The fact that this "further relief" was not *limited to* awards of interest is immaterial to this case, where the only further relief awarded was specifically authorized by the relevant portion of the statute; we decline to impose a technical pleading requirement that we would likely not impose on a formal civil pleading. See *Secrest v. Department of Corrections*, 64 Ill. App. 3d 458, 459 (1978) ("[C]harges filed before an administrative agency need not be drawn with the refinements and subtleties of pleadings before a court."); *cf. Norman A. Koglin Associates v. Valenz Oro, Inc.*, 176 Ill. 2d 385, 395 (1997) (" 'Pleadings are not intended to create obstacles of a technical nature to prevent reaching the merits of a case,' but instead are intended 'to facilitate the resolution of real and substantial controversies.' "). Nevertheless, we express no opinion as to what "further relief," in addition to awards of interest, might have been authorized here.

¶ 108                    D. The Commission's Choice of Remedies

¶ 109      We review the Commission's choice of remedies for an abuse of discretion.

> "Under this standard, the Commission's award will not be disturbed unless it is arbitrary or capricious, or unless no reasonable person would agree with the Commission's position. [Citation.] A decision is arbitrary and capricious if it contravenes legislative intent, fails to consider a critical aspect of the matter, or

- 41 -

offers an explanation so implausible it cannot be considered an exercise of the agency's expertise. [Citation.] In determining whether there has been an abuse of discretion, this court may not substitute its judgment for that of the agency, or even determine whether the agency exercised its discretion wisely. [Citation.]" *Windsor Clothing Store v. Castro*, 2015 IL App (1st) 142999, ¶ 48.

¶ 110    1. *The Commission's Award of "Unrequested" Remedies*

¶ 111    AIGI argues that the Commission's award of interest and damages in excess of $200,000 was arbitrary and capricious because the Commission failed to consider that Franchino had not requested these remedies in every filing. This argument overlooks that "failed to consider" means what it says: "failed to consider." See, *e.g.*, *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167 (1962) (setting aside a decision of the Interstate Commerce Commission when "[t]here [we]re no findings and no analysis *** to justify the choice made, no indication of the basis on which the Commission exercised its expert discretion"). Here, the Commission specifically *considered* that these remedies had not been requested at certain points but "cogently explain[ed] why it *** exercised its discretion in a given manner." *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 48 (1983). With respect to the awards of interest, AIGI takes no issue with the Commission's explanation, so we find no abuse of discretion and affirm the awards of interest as to AIGI only. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited ***.").

¶ 112    With respect to the $125,000 in damages for emotional distress in excess of the $200,000 suggested in both pre and posthearing submissions, we agree that this 62.5% increase is eye-catching. However, we reject the employers' argument that such a suggestion functions as a cap on the Commission's award. As noted above, a prehearing memorandum is only an

administrative convenience for the Commission; it is not a formal amendment to the complaint, nor is it evidence. To give a prehearing memorandum conclusive weight would render it a *de facto* amendment to the complaint and excuse the Commission from its obligation to make its findings based on the hearing record. See 5 ILCS 100/10-35(c) (West 2022). On review, we must treat the Commission's findings, not the complainant's suggestion, as *prima facie* correct. *Raintree Health Care Center v. Illinois Human Rights Comm'n*, 173 Ill. 2d 469, 479 (1996).

¶ 113 Furthermore, requiring the Commission to treat a suggestion in the claimant's prehearing memorandum as a cap on damages would disincentivize claimants' attorneys from ever making good-faith suggestions out of the possibility that their clients might not be awarded a full recovery. A litigant's suggestion for the proper damage award is neither a floor nor a ceiling that binds the Commission. Accordingly, we decline to overturn the Commission's award on the basis that it exceeded Franchino's suggestion.

¶ 114                    2. *The Amount of Damages for Emotional Distress*

¶ 115 The employers argue that the Commission's award of damages for emotional distress was both unwarranted and excessive. "The amount of damages awarded to a prevailing claimant by the Commission will not be disturbed on review absent an abuse of discretion." *Windsor Clothing*, 2015 IL App (1st) 142999, ¶ 48; see 775 ILCS 5/8A-104(B) (West 2022) (providing that actual damages must be "reasonably determined by the Commission"). An award of damages is "excessive only if it is unfair and unreasonable, if it results from passion or prejudice, or it is so excessively large that it shocks the conscience." *Donnellan v. First Student, Inc.*, 383 Ill. App. 3d 1040, 1063 (2008).

¶ 116 Although damages for emotional distress are difficult to quantify, the award must nevertheless be supported by the evidence presented at the hearing. See *MIFAB*, 2020 IL App (1st)

181098, ¶ 76; 5 ILCS 100/10-35(c) (West 2022); see also *Donnellan*, 383 Ill. App. 3d at 1064 (emphasizing that an "award for noneconomic damages *** still must be a product of the evidence"). However, the Commission may award damages for emotional distress based on a claimant's testimony alone, despite the employers' argument that evidence from a mental health professional was required. See *Thornton v. Garcini*, 237 Ill. 2d 100, 108 (2009) ("The absence of medical testimony does not preclude recovery for emotional distress.").

¶ 117    Initially, the employers argue that Franchino failed to overcome the presumption that the award of back pay was adequate to make her whole. This presumption has a long pedigree in the Commission's employment cases:

"The Commission will presume that the recovery of all pecuniary losses (such as back pay) fully compensates an aggrieved party for his or her losses.

In unusual circumstances, however, where the Complainant has set forth facts which clearly and unmistakeably show a violation of the Act and where it is absolutely clear from the record that the recovery of the Complainant's pecuniary loss will not adequately compensate the Complainant for his or her actual damages, the Commission will award, as compensation, an amount of money which is adequate to make up for the humiliation and embarrassment caused by the violation of the Human Rights Act. The measure of damages should be whether the amount of the award is appropriate in light of the nature and duration of the suffering experienced by the Complainant. [Citation.] The amount of damages awarded is appropriate if it is sufficient to 'ease one's feelings' regarding the humiliation occasioned by the civil rights violation. [Citations.]" *Smith*, Ill. Hum. Rts. Comm'n Rep. 1982CF1564, 2005 WL 3452447, at *6 (Oct. 31, 1985).

See, *e.g.*, *Stewart*, Ill. Hum. Rts. Comm'n Rep. 2007CF2704, 2023 WL 8192594, at *22 (Nov. 21, 2023) ("Therefore, to recover emotional distress damages, Complainant must prove that he has experienced emotional distress significantly over and above that which is to be expected from a mere violation of the Act.").

¶ 118    The procedural requirements for overcoming this presumption are not spelled out in the Commission's rules, nor is it immediately clear what basis this heightened burden of proof has in the Act itself, which does not provide for "mere" violations in the context of employment but simply defines what "is a civil rights violation" (775 ILCS 5/2-102 (West 2022)), with no expressed preference for any particular remedy (see *id.* § 8A-104(B) (providing that "actual damages *** for injury or loss suffered by the complainant" are one of several potential remedies); *id.* § 8A-102(I)(2) (allowing the Commission to choose "appropriate relief as provided by this Act")). Indeed, the Act affords no refuge for employers who engage in sexual harassment but pay their employees well. See *id.* §§ 2-101(E)(3), 2-102(D); see also *id.* § 1-102 ("It is the public policy of this State *** [t]o prevent sexual harassment in employment *** [and to] promote the public health, welfare and safety by protecting the interest of all people in Illinois in maintaining personal dignity ***.").

¶ 119    Because the parties do not address this issue, we assume for the sake of argument that Franchino was required to overcome the Commission's presumption that the award of back pay was adequate to make her whole. *Cf. Board of Education of the City of Chicago v. Moore*, 2021 IL 125785, ¶ 59 (emphasizing that an agency had flexibility in choosing how to implement a remedial discipline system under the authorizing statute). We have no trouble sustaining the Commission's conclusion that Franchino met this burden.

¶ 120       First, the award of back pay and interest made Franchino whole with respect to her retaliation claims against AIGI, but it afforded her no additional relief for Schwartz's harassment. It was eminently reasonable for the Commission to conclude that some form of compensation for Schwartz's conduct would still be necessary to make Franchino whole, particularly given Schwartz's violations of Franchino's bodily integrity. Assuming the harassment and retaliation were grouped together as a single violation, the Commission could still have reasonably concluded that this was no "mere" violation to be remedied with back pay alone. Even if the employers had paid Franchino the $100,000 per year that Schwartz had promised her, that would only have made her an insurance agent, not Schwartz's "girlfriend," "stripper," or "prostitute" that he could ask for massages and harass with impunity. Furthermore, Schwartz's sexual harassment had ramifications beyond the workplace, leading to embarrassment and humiliation of Franchino in front of clients and third parties as well as her coworkers. An award of damages for her emotional distress was more than reasonable.

¶ 121       Turning to the amount of the emotional distress award, the employers allege that $325,000 is the largest such award in the Commission's history, an allegation that the Commission does not dispute. See *Hobby Lobby Stores, Inc. v. Sommerville*, 2021 IL App (2d) 190362, ¶ 13, 50 (upholding an award of $220,000 for emotional distress made after a full adversarial proceeding). Although some degree of comparison is unavoidable when emotional distress is quantified, we have repeatedly cautioned against the use of other damages awards as the determining factor. *Windsor Clothing*, 2015 IL App (1st) 142999, ¶ 47. Instead, our overarching consideration is whether the award is "within reasonable parameters." *Bellwood Board of Fire & Police Commissioners*, 184 Ill. App. 3d at 355. While the size of the award here may be greater than in prior cases, we cannot conclude on that basis alone that it is excessive.

¶ 122 The employers also point to the fact that the $325,000 award of emotional distress damages is higher than the $200,000 that Franchino indicated she was seeking in the prehearing memorandum. We have already decided, above, that a damage estimate in the prehearing memorandum does not act as a legal cap on the claimant's recovery of emotional distress damages, but we understand that the employers' argument here is slightly different, *i.e.*, that the upward departure from Franchino's own request is an indication of the excessiveness of the ultimate award. Recalling that the award in question was made in a nonadversarial default situation, it may well be surprising to see the ALJ's award exceed Franchino's prehearing request by approximately 63%. Still, we cannot conclude on this basis alone that the award is excessive.

¶ 123 Despite the above concerns, we have not found the emotional damages award to be suspect because Franchino did not seek treatment, because it appears to set a new high for the Commission, or because Franchino initially requested a lower amount. While none of these concerns provides a basis to set aside the award in question, they do underscore the necessity that the amount settled on by the ALJ and adopted by the Commission must have a firm basis in the evidence, which here consisted only of Franchino's testimony. Such concerns simply draw into acute focus the question of whether the award resulted from passion or prejudice. See *Donnellan*, 383 Ill. App. 3d at 1063. On that score, we cannot look beyond the ALJ's reasoning in the written findings required by the Act and adopted by the Commission in full. See 775 ILCS 5/8A-102(I)(2), 8A-103(A) (West 2022). Indeed, the Commission itself has recognized that specific findings by the ALJ are critical for evaluating an award in these circumstances. See *Sommerville*, Ill. Hum. Rts. Comm'n Rep. 2011CN2993, 2019 WL 2024088, at *31 (July 28, 2017) (remanding to the ALJ for further findings to support the award of $220,000 in damages for emotional distress), *aff'd*,

*Hobby Lobby Stores*, 2021 IL App (2d) 190362. Here, careful scrutiny of the ALJ's findings suggests that both passion and prejudice factored into the recommended award.

¶ 124        First, the ALJ stated that "a higher figure for emotional distress damages than [Franchino] ha[d] requested \*\*\* did not arise in principal measure from the verbal testimony [Franchino] offered at the public hearing," but from her "carriage and demeanor" while testifying. While it is true that a witness's demeanor while testifying can bolster the *believability* of her verbal testimony, it is not the case that her emotional distress while testifying is evidence in and of itself. Instead, sympathy for a testifying witness is an improper consideration. *Cf.* Illinois Pattern Jury Instructions, Civil, No. 1.01(A)(3) (rev. Nov. 2023). Therefore, the ALJ's explanation that Franchino's testimony was "unquestionably distressing and heartbreaking to watch" suggests that the Commission's award was the product of passion based on her presentation rather than a dispassionate assessment of the proper amount of damages.

¶ 125        Second, an award of noneconomic damages is intended to make the claimant whole, not to penalize the respondent, so the egregiousness of Schwartz's conduct is relevant only to the extent it affected the severity of Franchino's emotional distress. This principle is one reason why quantitative comparisons from case to case are so unhelpful; the same egregious conduct may have a different effect on different claimants. However, the ALJ's statement that "this case represents many of the most egregious and repugnant examples of sexual harassment" suggests that the Commission's award of the largest amount of emotional distress damages in its history was the product of prejudice borne from its reaction to Schwartz's conduct, not the effect it had on Franchino. The award of damages is intended to compensate, not to punish.

¶ 126        For these reasons, we conclude that the Commission's award of $325,000 constituted an abuse of discretion.

¶ 127                                          E. Remand

¶ 128          The employers ask us either to remand for a hearing on the amount of emotional distress damages or to remit the $325,000 award to the $200,000 Franchino requested. For her part, Franchino asks us to remand so she can request the additional attorney fees and costs she has incurred since the entry of the ALJ's initial recommendation. See *Hobby Lobby*, 2021 IL App (2d) 190362, ¶ 58 (entering such a remand). We conclude that the best course of action under these circumstances is to remand for the Commission to hold a hearing on a redetermination of a reasonable amount of emotional distress damages, as well as to consider Franchino's request.

¶ 129          Because we are remanding for an evidentiary hearing, the employers' challenge to the Commission's refusal to reopen the hearing record is now moot. The employers may raise any outstanding evidentiary matters on remand; however, the employers may not challenge their liability for emotional distress damages. Although we have found that $325,000 was excessive on the existing hearing record, we express no opinion as to what amount of damages may be appropriate after remand except to reiterate the principles outlined above. Finally, we express no opinion as to whether Franchino's request for additional attorney fees and costs should be granted.

¶ 130                                        III. CONCLUSION

¶ 131          For the reasons stated, we vacate the Commission's order outright to the extent it found Schwartz liable for back pay, interest, and the interest on Franchino's personal loans; we affirm the Commission's findings regarding liability in all other respects. We vacate the Commission's award of $325,000 in damages for emotional distress; we affirm the Commission's award in all other respects. We remand this matter to the Commission so that it may conduct a hearing on the amount of damages for emotional distress and consider Franchino's request for the

- 49 -

additional attorney fees and costs she has incurred since the entry of the ALJ's initial recommendation.

¶ 132        Affirmed in part and vacated in part; cause remanded with directions.

*Schwartz v. Illinois Human Rights Comm'n*, 2024 IL App (4th) 231248

| | |
|---|---|
| **Decision Under Review:** | Review of order of the Illinois Human Rights Commission, No. 18-206C. |
| **Attorneys for Appellant:** | Christopher J. Drinkwine, of Heyl, Royster, Voelker & Allen, P.C., of Rockford, for appellants. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Nancy Jack, Assistant Attorney General, of counsel), for the Illinois Human Rights Commission and the Illinois Department of Human Rights.<br><br>Amit Bindra, of The Prinz Law Firm, P.C., of Chicago, and Penelope M. Lechtenberg, of Lechtenberg & Associates LLC, of Rockford, for other appellee. . |