2025 IL App (1st) 231452

No. 1-23-1452

First Division
February 3, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MARC ARCHAMBEAU, | ) | Petition for Review of an Order of the |
| | ) | Illinois Human Rights Commission |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FERTILITY CENTERS OF ILLINOIS, and | ) | Charge No. 18-CN-0231 |
| INTEGRAMED AMERICA, INC., | ) | ALS Charge No. 18-0413 |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE COBBS delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The Illinois Human Rights Commission did not abuse its discretion in adopting hearing officer's recommendation to dismiss petitioner-appellant's administrative complaint for want of prosecution pursuant to the Illinois Human Rights Act.

¶ 2    This case comes before us following the entry of a final order by the Illinois Human Rights Commission (the Commission), which dismissed an administrative proceeding for want of prosecution pursuant to the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.* (West 2016)

(Act). Petitioner-appellant, Marc Archambeau, was previously employed by Fertility Centers of Illinois, S.C. (Fertility Centers) as its Director of Revenue and Finance beginning in July 2016. Sometime in December 2016, Archambeau was arrested and indicted in Cook County for a variety of crimes related to his previous employment. After learning of the indictment and Archambeau's eventual guilty plea, Fertility Centers discharged Archambeau from his position in June 2017.

¶ 3    Archambeau subsequently filed a charge of discrimination with the Illinois Department of Human Rights (the Department), alleging that Fertility Centers had discharged him based on his arrest record in violation of the Act. The Department determined that there was substantial evidence to the charge and filed a complaint on Archambeau's behalf before the Commission. Following discovery and motion practice, the parties filed respective dispositive motions for summary decision before the assigned administrative law judge (ALJ) in 2021. However, at some point in 2021, the assigned ALJ left the Commission without resolving the motions and the matter was reassigned to a new ALJ. After Archambeau's counsel failed to appear at a motion to withdraw hearing filed by one of Fertility Centers' attorneys in August 2021, the new ALJ issued an order in December 2022 requiring the parties to update their appearances and attend a status hearing. Archambeau's counsel failed to appear at that hearing and the ALJ subsequently issued a recommendation to dismiss the case for want of prosecution. The Commission adopted the Recommended Order in March 2023 after receiving no objections to the order.

¶ 4    Subsequently, Archambeau filed a motion to vacate the adopted order, arguing that he had never received any of the previous orders requiring his appearance. The Commission vacated the order and reconsidered the matter, but ultimately declined further review and adopted the Recommended Order as its final order. Archambeau now appeals, arguing that the Commission

abused its discretion in dismissing his complaint for want of prosecution.[1] For the reasons that follow, we affirm the decision of the Commission.

¶ 5                                    I. BACKGROUND

¶ 6                          A. Archambeau's Discharge[2]

¶ 7     The Act prohibits discrimination across a variety of statuses and classes. 775 ILCS 5/1-102, 1-103(Q) (West 2016). Relevant here, section 2-103(A) of the Act prohibits an employer from "inquir[ing] into or us[ing] an arrest record" as a basis for discharge. 775 ILCS 5/2-103(A) (West 2016).[3] The Act is administered by two agencies, the Department and the Commission. See 775 ILCS 5/7-101, 775 ILCS 5/8-101, 775 ILCS 5/8A-101 (West 2016). The Department may investigate, bring charges, and file complaints in conformity with the Act. 775 ILCS 5/7-101(B), 775 ILCS 5/7-101(D), 775 ILCS 5/7A-102 (West 2016) (outlining procedures for charges brought pursuant to article 2 of the Act). If the Department determines that the charges are supported by substantial evidence, it may file a complaint on behalf of the aggrieved party to the Commission. 775 ILCS 5/7A-102(C)(1) (West 2016)[4]; 775 ILCS 5/7A-102(D)(4) (West 2018). Once the complaint is filed, the Commission's duties include, among others, hearing and deciding complaints in accordance with the Act and through promulgation of its own rules and procedures. 775 ILCS 5/8A-101(G) (West 2016); 775 ILCS 5/8A-102 (West 2016).

---

[1]Pursuant to Rule 335, both Fertility Centers and the Commission are respondents in this appeal and have filed response briefs. See Ill. S. Ct. R. 335(a) (eff. July 17, 2017) ("The agency and all other parties of record shall be named respondents.")

[2]The following facts are derived from the record on appeal, which include the investigation and complaint filed by the Department, the pleadings and answers, and the administrative record.

[3]"Arrest record" is defined as "(1) an arrest not leading to a conviction; (2) a juvenile record; or (3) criminal history record information[.]" 775 ILCS 5/1-103(B-5) (West 2020).

[4]"Substantial evidence" is defined as "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2018).

¶ 8    Fertility Centers is a medical practice with at least one office located in Glenview, Illinois. On July 5, 2016, Fertility Centers hired Archambeau, where he was responsible for billing and collections. At time of hire, Archambeau did not have a prior arrest record and was not asked if he had ever been arrested, had an arrest record, or had been convicted of a crime. During his tenure at Fertility Centers, Archambeau apparently received two written disciplinary warnings, with a final warning issued in September 2016 regarding his conduct and relationships with other employees.

¶ 9    On December 20, 2016, Archambeau was arrested and charged with six counts of criminal conduct from his prior employment at the University of Illinois Hospital and Health Science Services System. On January 18, 2017, Archambeau was formally indicted in the circuit court of Cook County, Illinois. According to an investigation report conducted by the Department the indictments included: (1) theft in excess of $100,000; (2) identity theft in excess of $100,000; (3) money laundering in a money instrument not exceeding $10,000; (4) concealing monetary property, not exceeding $10,000; and (5) two counts of official misconduct.

¶ 10    On May 19, 2017, Fertility Centers placed Archambeau on administrative leave. On June 1, 2017, Fertility Centers discharged Archambeau by letter sent via e-mail. The discharge letter stated that the company had learned of Archambeau's arrest by another employee five months after the fact, which suggested that Archambeau had intended to hide the allegations from his employer. The letter also mentioned Archambeau's prior disciplinary warnings, which, coupled with his failure to disclose his arrest, led to a breach of the company's trust in him.

¶ 11                                    B. Investigation

¶ 12    In August 2017, Archambeau filed a charge with the Department. Therein, he alleged that Fertility Centers was a qualifying employer under the Act and had violated the statute by discharging him based on his arrest record. On September 11, 2017, Fertility Centers filed an appearance through counsel, and subsequently filed a verified response to Archambeau's charge denying most of the allegations.

¶ 13    On October 12, 2018, after releasing an investigation report, the Department issued a finding that there was "substantial evidence" that a civil rights violation had occurred. Specifically, the Department determined that Fertility Centers did not have a policy in place which required an employee to report that they had been arrested, and that the company had terminated Archambeau based on his December 2016 arrest. On November 8, 2018, Archambeau's counsel formally requested that the Department file a complaint on Archambeau's behalf.

¶ 14                    C. Commission Proceedings

¶ 15                    *1. Pretrial*

¶ 16    On December 17, 2018, the Department filed a complaint with the Commission. The next day, the Commission issued a Notice of Public Hearing, which indicated that an ALJ had been appointed to preside over the proceedings. The notice set the case for status on February 19, 2019, and ordered the parties to file a joint prehearing memorandum by February 5, 2019, which was to include each party's name, address, and telephone number of counsel.

¶ 17    The notice included a document captioned "Information for Litigants Before the Administrative Law Section of the [Commission]." This document indicated that all cases were to proceed in accordance with the Act and the Commission's administrative rules, and warned that "[f]ailure to comply with them may result in sanctions, including dismissal or default." The document further advised that all parties and counsel were required to promptly notify the

Commission of any change of address in writing, and that failure to do so would result in an order or other correspondence being returned undelivered. The document further warned that any such undelivered order or document was still "effective" for purposes of service, and that failure to comply with any orders would also result in default or dismissal. Finally, the document stated that all filings were to be served on the Commission at its office at 100 West Randolph Street in Chicago, Illinois.

¶ 18    On January 22, 2019, two appearances were filed on behalf of Fertility Centers by the law firm, Greenberg Taurig, LLP. That same day, Fertility Centers filed a verified answer and affirmative defenses to the complaint.

¶ 19    On February 19, 2019, the ALJ entered an order requiring the parties to serve initial discovery requests by March 22, 2019. On April 17, 2019, Fertility Centers filed answers and objections to Archambeau's first set of interrogatories, as well as responses to Archambeau's requests to admit.

¶ 20    On May 7, 2019, Archambeau motioned and was granted leave to amend the complaint to add IntegraMed America, Inc. (IntegraMed) as a new party. The amended complaint alleged that IntegraMed was an integrated or joint employer with Fertility Centers, that IntegraMed had hired Archambeau, and that it had one of its employees question him about his arrest.

¶ 21    On July 17, 2019, Greenberg Taurig filed an appearance on behalf of IntegraMed, along with an answer and affirmative defenses. The parties engaged in continued discovery and motion practice, which included the entry of a protective order on November 6, 2019, and a motion to compel filed by Archambeau against IntegraMed. The record reflects a gap in the timeline of events due to the COVID-19 pandemic where no status was held on the matter for a few months. The Commission eventually issued an order on May 6, 2020, setting the case for status in

September. Additionally, in August 2020, Greenberg Taurig filed a motion to withdraw as counsel for IntegraMed, indicating that the company had filed for bankruptcy. [5]

¶ 22                                    2. *Dispositive Motions*

¶ 23    On October 2, 2020, Archambeau filed a motion for partial summary decision supported by affidavit.[6] Therein, he argued that Fertility Centers and IntegraMed were joint employers, and both companies had violated the Act by inquiring into and subsequently terminating him because of his arrest. Archambeau further requested that the matter be set for hearing solely on damages.

¶ 24    On October 7, 2020, Fertility Centers filed its own motion for summary decision. Therein, the company argued that it did not have the requisite number of employees for liability under the Act, and it was not Archambeau's employer nor a joint employer with Integrated. Both parties filed responses and replies to each respective motion.

¶ 25                                    3. *August 2021 Motion to Withdraw*

¶ 26    On June 25, 2021, an attorney with Greenberg Taurig filed a motion to withdraw as counsel for Fertility Centers. The motion was set for telephonic hearing on August 4, 2021. The notice of motion indicated that there was a new ALJ assigned to preside over the case. The notice also listed the phone number and e-mail for Archambeau's counsel, with proof of service indicating that the notice had been sent by e-mail on June 25, 2021, as well as to counsel's physical address at 20 South Clark Street in Chicago.

¶ 27    On August 25, 2021, the newly assigned ALJ entered an order granting the motion to withdraw. The order stated that the hearing on the motion to withdraw had been set for August 17,

---

[5]No pleadings have been filed by or on behalf of IntegraMed since Greenberg Taurig's withdrawal nor has a brief been filed by or on its behalf.

[6]The parties delineate these motions as summary judgment motions, but the Code defines them as motions for summary decision. See 775 ILCS 5/8-106.1 (West 2016).

2021, but Archambeau's counsel had not appeared. The order additionally stated that the ALJ had called him at the number provided on the notice, but did not get an answer and left a voicemail. Finally, the order stated that both parties' motions for summary decision "remain[ed] pending and [would] be ruled on by mail." The proof of service indicated that the order was placed in the mail and sent to Archambeau's counsel's Clark Street address.

¶ 28                                  4. *The Commission Moves*

¶ 29     In May 2022, the Commission moved from its address at 100 N. Randolph Street to the Michael A. Bilandic Building at 160 N. LaSalle Street. This change of address was announced in the Commission's quarterly newsletter.[7]

¶ 30                                  5. *December 2022 Order*

¶ 31     On December 9, 2022, the ALJ entered a five-page order on her own motion. The purpose of the order was to determine whether Archambeau was still actively involved in the matter before ruling on the parties' motions for summary decision. Proof of service of the order was again addressed to Archambeau's counsel's Clark Street address.

¶ 32     The order indicated that Archambeau had not filed anything in the case since the matter had been reassigned. In particular, the order also recounted the events related to the motion to withdraw hearing in August 2021, where Archambeau's counsel had not been present and the ALJ had attempted to contact him via telephone without success. The ALJ also noted that Archambeau had not filed an updated appearance in the case as required by the Commission's recently amended

---

We take judicial notice that the Commission moved to 160 N. LaSalle in May 2022. See *State of Illinois Human Rights Commission Quarterly Newsletter: April-June*, issued June 24, 2022, at https://hrc.illinois.gov/content/dam/soi/en/web/hrc/documents/newsletter-06242022-4-2-final.pdf (last accessed January 22, 2025); *People v. Wells*, 2019 IL App (1st) 163247, ¶ 42 (courts may take judicial notice of factual evidence when the facts are capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy); Ill. R. Evid. 201 (eff. Jan. 1, 2011).

rules. The order further stated that the ALJ was prepared to rule on the pending motions within the next 90 days, and that the Commission's rules had also been amended to allow for electronic service of orders.

¶ 33    To determine whether the parties wished to continue with the case, the ALJ ordered them to update their appearances to include a current and working e-mail address using the Commission's revised appearance form available on its website. In doing so, the ALJ reminded all the parties, including counsel, that they were required to promptly notify the Commission, in writing, of any change to a mailing or e-mail address. Significantly, the ALJ advised that:

> "Where a party's failure to update contact information results in an electronic order or other correspondence from the Commission being returned as 'UNDELIVERABLE,' such electronic order or correspondence remains effective, and a party's failure to comply with or respond to such an electronic order may result in sanctions being imposed (including dismissal or default)."

¶ 34    Additionally, the parties were ordered to appear at a status scheduled for January 23, 2023. The order advised that Archambeau's failure to appear would result in a dismissal for want of prosecution. Likewise, the order indicated that Fertility Centers' failure to appear would result in Archambeau being granted leave to file a fee petition for reasonable attorney fees and costs. However, if the parties appeared, they could expect a ruling on their dispositive motions within 45 days of the status. The order delineated access to the status by way of phone or web conference. The order reiterated that failure to comply with the order or absence at the status would "result in the imposition of sanctions as permitted under the *** Act and the Commission's procedural rules (e.g., default or dismissal) and as justice may require."

¶ 35                              6. *Recommended Order*

¶ 36    On January 25, 2023, the ALJ entered a 10-page order on her own motion which recommended dismissal of want of prosecution. The order stated that, "[d]espite repeated efforts of this administrative court to determine whether the parties continue to be active participants in this case, [Archambeau] has not participated in the proceedings for over sixteen (16) months, and [r]espondents appear to have done the same, although more recently." The order recounted the case's procedural history, in particular highlighting Archambeau's failure to appear at two status hearings over a 16-month period, including the January 23, 2023, hearing. The ALJ also observed that Archambeau had failed to file an updated appearance as required by the December 2022 order, and which had not been returned "undeliverable." The ALJ reasoned that Archambeau's "apparent abandonment of his case constitute[d] a failure to diligently prosecute the same[.]"

¶ 37    The order also stated that respondents had failed to comply with the same order by not appearing at the same status date or updating their appearances. As such, the ALJ concluded that "both parties [were] no longer interested in participating in this matter" and recommended to the Commission that the case be dismissed with prejudice pursuant to 775 ILCS 5/8A-102(I)(6) and 56 Ill. Adm. Code 5300.750(e) to "advance the interests of judicial economy." Proof of service of the January 25, 2023 order indicated that it was sent by mail to Archambeau's counsel's Clark Street address. However, the record reflects that the order was returned to the Commission on March 14, 2023, stamped "Return to sender; attempted; not known; unable to forward."

¶ 38                              7. *Commission Adopts the Recommended Order*

¶ 39    On March 28, 2023, the Commission issued an order (the March 2023 order), which stated that the Commission had adopted the Recommended Order after not receiving any timely exceptions. The record reflects that, proof of service of the March 2023 order indicates that it was sent to Archambeau's counsel at an incorrect address listed as "20 South LaSalle Street."

¶ 40                                    8. *Motion to Vacate*

¶ 41    On April 4, 2023, Archambeau filed a motion to vacate or for reconsideration of the March 2023 order. Therein, Archambeau asserted that he had never received any of the previous orders entered by the ALJ, including the Recommended Order, until the Commission adopted it through its March 2023 order. According to counsel, this was because he had recently relocated his offices from the Clark Street address to 53 West Jackson Boulevard, Chicago. In support, he attached as an exhibit a notice of change of address apparently sent to the Commission on January 13, 2023. The notice reflected the West Jackson Boulevard address, had been "effective" as of December 1, 2022. The notice also listed counsel's phone number but did not contain an e-mail address. Additionally, the notice was addressed to the Commission at 100 West Randolph Street, its former address.

¶ 42    According to Archambeau, the ALJ'S Recommended Order had been sent to his counsel's old address, but never properly forwarded to his new one. Archambeau indicated that he had only learned through recent communication with the Commission that it had never received his change of address notice, and thus had never been made aware of any prior status dates set by the ALJ in 2022. However, he had received the March 2023 order because it had been first delivered to his old address and then properly forwarded to the new one. Regarding the missed motion to withdraw hearing in August 2021, Archambeau conceded that he had chosen not to appear because he was waiting for a ruling on the fully briefed motions for summary decision, and thus did not believe it was necessary for him to appear.

¶ 43    On April 26, 2023, the Commission received a second change of address notice from Archambeau's counsel. The proof of service correctly listed the Commission's new address at 160 N. Lasalle as well as the Commission's e-mail.

¶ 44                              9. *The Commission Vacates the March 2023 Order*

¶ 45     On May 2, 2023, the Commission entered an order on Archambeau's motion to vacate. It stated that the Recommended Order adopted by the Commission had been "sent in error to the wrong address and the parties were not properly served." It also vacated the March 2023 order, and ordered the Recommended Order to be promptly re-filed and served upon all parties.

¶ 46                              10. *Exceptions to the Recommended Order*

¶ 47     On May 17, 2023, Archambeau filed exceptions to the Recommended Order, arguing that the recommendation to dismiss the case for want of prosecution was improper as the parties had not abandoned the case. Fertility Centers filed a response, arguing, *inter alia*, that Archambeau had failed to provide any valid justification for his lack of participation. Archambeau filed a reply, to which Fertility Centers filed a motion to strike as impermissible under either the Act or the Code. Archambeau's reply was subsequently denied as moot.

¶ 48                              11. *Commission's Final Order*

¶ 49     On August 1, 2023, after considering the Recommended Order and the parties' briefings, the Commission declined further review and adopted the Recommended Order as the Order of the Commission (the final order).[8] On August 15, 2023, Archambeau filed a petition for administrative review of the Commission's final order. This appeal followed.

¶ 50                              II. ANALYSIS

¶ 51                              A. Jurisdiction

---

[8]Although the order is dated August 1, 2023, the proof of service of the order states that it was delivered by e-mail or first-class mail to the parties on July 27, 2023.

¶ 52    Although not raised by the parties, we have an independent duty to assess our jurisdiction to review this appeal, which is only established when a party files a timely notice. *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill App. 3d 548, 556 (2009). Generally, Illinois Supreme Court Rule 301 permits an appeal as of right of every final judgment in a civil case within 30 days of the last pending post-judgment motion. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); Ill. S. Ct. 303(a)(1) (eff. July 1, 2017). However, review of Commission decisions are different. Specifically, the Act allows for direct appellate review of any final order of the Commission. 775 ILCS 5/8-111(B)(1) (West 2020); see also 735 ILCS 5/3-113 (West 2020) (establishing procedures for direct statutory review of administrative orders). A timely petition must be filed in the appellate court district where the civil rights violation occurred, and within 35 days from the date that the final decision was served upon the party affected by the decision. 775 ILCS 5/8-111(B)(1), (B)(3) (West 2020); Ill. S. Ct. R. 335(a) (eff. July 1, 2017).

¶ 53    Here, the Commission entered its final order on August 1, 2023, although we observe that the proof of service on the order confusingly indicates that it was sent to the parties on July 27, 2023. However, Archambeau filed his petition on August 15, 2023, well within the 35-day time requirement for either date. Thus, we have jurisdiction to review the Commission's final order.

¶ 54                                  B. Standard of Review

¶ 55    The parties agree that the appropriate standard of review for the Commission's final order adopting the sanction of dismissal is abuse of discretion. We review decisions of the Commission, not the Department, meaning we examine the Commission's determination as if it were the original fact finder. *MIFAB, Inc. v. Illinois Human Rights Comm'n*, 2020 IL App (1st) 181098, ¶ 36; *Champaign-Urbana Public Health District v. Illinois Human Rights Comm'n*, 2022 IL App (4th) 200357, ¶ 18.

¶ 56    As the parties correctly note, we review the Commission's decision to adopt the Recommended Order for dismissal with prejudice as a sanction under an abuse of discretion standard. *MIFAB, Inc.*, 2020 IL App (1st) 181098, ¶ 41. A sanction is an abuse of discretion if it is arbitrary and capricious, or if the sanction is overly harsh in view of the mitigating circumstances. (Internal citations and quotation marks omitted.) *Id.*; see also *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 33 (Commission's decision is arbitrary and capricious where it "contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise.") (Internal citation omitted.) Moreover, "[i]f the record contains any evidence supporting the Commission's decision, we must sustain the decision on review." (Internal quotations and citation omitted.) *Champaign-Urbana Public Health District*, 2022 IL App (4th) 200357, ¶ 181.

¶ 57                                C. Arguments

¶ 58                                1. *The Act*

¶ 59    The Act describes the procedures for the hearing and final disposition of a complaint. 775 ILCS 5/8A-102, 775 ILCS 5/8-106.1. To efficiently resolve the complaint, a hearing officer has certain powers. Relevant here, section 8A-102(6) of the Act provides that a hearing officer "may issue a recommended order of dismissal with prejudice or a recommended order of default as a sanction for the failure of a party to prosecute the party's case, file a required pleading, appear at a hearing, or otherwise comply with this Act, the rules of the Commission, or a previous order of the hearing officer." 775 ILCS 5/8A-102(I)(6) (West 2020).

¶ 60    The Commission's rules expound upon this provision as well as implement other requirements for the parties that are relevant here. First, the rules for filing appearances were

amended on October 5, 2022. Specifically, section 5300.560, like its prior version, provided that each complainant and respondent shall enter written appearances on behalf of the represented parties or by counsel as soon as a complaint is filed; however, the appearance is now to include the party or counsel's e-mail address. 56 Ill. Adm. Code 5300.560(a), (d) (eff. Oct. 5, 2022).[9]

¶ 61    Next, section 5300.750(e) addresses sanctions for unreasonable conduct, and states that:

>   "Should a Party fail to appear at a scheduled hearing without requesting a continuance reasonably in advance, or unreasonably refuse to comply with any Order entered under this Part, or otherwise engage in conduct which unreasonably delays or protracts proceedings, the Administrative Law Judge may file a recommendation of dismissal with prejudice or default or other appropriate Order imposing sanctions as justice may require[.]" 56 Adm. Code 5300.750(e) (eff. Jan. 1, 1998).

¶ 62    A party may file exceptions to a recommended order for dismissal or default within 30 days of receipt. 775 ILCS 5/8A-103(A) (West 2020); see also 56 Ill. Adm. Code 5300.760 (eff. June 1, 1996); 56 Ill. Adm. Code 5300.920 (eff. June 1, 1992).

¶ 63                                    2. *Preliminary Matters*

¶ 64    In his opening brief, Archambeau asserts that he has not found any authority directly on point that discusses an appeal of a Commission decision in this particular procedural posture. As such, Archambeau instead argues that various portions of the Code of Civil Procedure are persuasive in our resolution of the appeal, specifically section 2-1301 (735 ILCS 5/2-1301) (West 2020), which governs vacating default and non-final judgments within 30 days, and section 2-1401 (735 ILCS 5/2-1401) (West 2020), which governs relief from final judgments. Noticeably,

---

[9]It appears that the Commission previously did not allow for electronic service of orders. See 46 Ill. Reg. 173453 (eff. Oct. 5, 2022) (amending 56 Ill. Adm. Code 5300.560).

Archambeau does not cite or mention the Commission's enabling Act or the administrative rules that effectuate the statute.

¶ 65    Unsurprisingly, both the Commission and Fertility Centers have taken note of Archambeau's seeming omission. Specifically, Fertility Centers argues that the Code of Civil Procedure does not apply to administrative proceedings such as Commission hearings. Consequently, Fertility Centers reasons that Archambeau's failure to cite the Act and the Commission's rules have in effect waived any arguments against the final order's validity. The Commission agrees with Fertility Centers that the Code is not applicable, but makes no argument as to waiver.

¶ 66    In his reply, Archambeau attempts to explain away the absence of any reference to the Act and its corresponding regulations, but maintains that, his contention was always that the Commission improperly dismissed his complaint, and thus such an argument has not been waived.

¶ 67    We acknowledge that the Code of Civil Procedure does not apply to administrative hearings, unless it has been specified as such in the enabling act or regulations. *Jones v. Illinois Department of Human Rights*, 162 Ill. App. 3d 702, 705 (1987); see, *e.g.*, 775 ILCS 5/8A-102(F) (West 2020) (expressing that, with regard to discovery procedures, Code of Civil Procedure may be considered "persuasive authority" in the event that the Commission has not promulgated similar rules); 56 Ill. Adm. Code 5300.750(a) (eff. Jan. 1, 1998) (adverse examination of a witness shall be conducted in similar manner as that of corresponding provision within Code of Civil Procedure). That said, we reject out of hand any notion that the issue of dismissal has been forfeited. Archambeau timely filed exceptions to the Recommended Order dismissing his complaint. We do not find his failure to cite to the applicable statute or rules, for whatever reason,

to be fatal to our consideration of his appeal. If anything, failure to do so goes more to the strength of his argument, for which he bears the burden as appellant.

¶ 68                                3. *Abuse of Discretion Claim*

¶ 69     Missing and incorrect legal citations aside, Archambeau maintains that the Commission abused its discretion by dismissing his case, as default judgments or dismissals for want of prosecution are drastic sanctions and cases should be resolved on the merits. In his opening brief, Archambeau contends that, at worst, he was only guilty of excusable mistake or inadvertent error, as there was no evidence of neglect or inexcusable delay to justify the sanction. On this point, Archambeau notes that he had prosecuted his case by filing an amended complaint, serving discovery, filing motions to compel, filing a dispositive motion, and responding to Fertility Centers' dispositive motion. Archambeau further maintains that he did not have to appear at the motion to withdraw hearing, and even if he did not file an updated appearance as required by order, his e-mail address was still available to the Commission as it had been listed on prior filed documents in the case. Archambeau also notes that he filed a change of address with the Commission on January 13, 2023, even though he acknowledges that it was not received by the Commission as he had mailed it to an incorrect mailing address.

¶ 70     Archambeau also argues that he acted diligently when he moved to vacate the March 2023 order a week after he learned of its existence. He observes that the March 2023 order had eventually been delivered to the correct address, whereas the Recommended Order had not, a fact that had been acknowledged by the Commission when it granted his motion. Finally, Archambeau

contends that vacating the dismissal would not prejudice the respondents beyond having to defend themselves at a hearing if both dispositive motions were denied.[10]

¶ 71    Fertility Centers maintains that the final order was proper under both the Act and the Commission's rules. First, Fertility Centers maintains that Archambeau's failure to attend the motion to withdraw hearing was sufficient grounds to dismiss the case and ultimately what led to further actions by the ALJ. Second, Fertility Centers reiterates that the December 2022 order was deemed "delivered" pursuant to Commission rules, and that Archambeau failed to comply with the requirements therein. Further, Fertility Centers notes, Archambeau's counsel did not file a change of address until six weeks after his move, which likely would have prevented further confusion. Third, Fertility Centers argues that Archambeau's "admitted failure" to check for any case activity "underscores the lack of diligence that has led to nearly five years of protracted proceedings for a single-claim dispute," citing, generally, *MIFAB, Inc.*, 2020 IL App (1st) 181098, among others.

¶ 72    The Commission's response generally mirrors Fertility Centers' brief. It further highlights Archambeau's decision to skip the motion to withdraw hearing as not inadvertent or in error given his intentional decision not to attend or inform either the ALJ or opposing counsel of his anticipated absence, as well as his undisputed failure to return the ALJ's phone call. Further, the Commission notes, Archambeau's attempts to place blame on the Commission in that it could have always served him the orders by e-mail is undercut by the agency's only recent rule amendments to allow for electronic service. In short, the Commission posits, Archambeau and his counsel take no responsibility in the conduct that led to the dismissal.

---

[10]Archambeau also argues that he has a meritorious claim. As the Commission never considered the case on its merits, we express no opinion on Archambeau's claim.

¶ 73    Upon review of the relevant timeline, we ultimately cannot agree with Archambeau that the Commission's decision to adopt the reissued Recommended Order was an abuse of its discretion. Although we are mindful that Archambeau was actively prosecuting his case prior to one of the Greenberg Taurig attorney's August 2021 withdrawal, the record also reflects that Archambeau's counsel's conduct thereafter was sufficient to warrant the ALJ's recommendation.

¶ 74    At the outset, it is clear that the plain language of the Act and its corresponding regulations allow for a hearing officer to recommend dismissal with prejudice as a sanction if a party fails to do a number of things beyond failing to prosecute its case. See *MIFAB, Inc.*, 2020 IL App (1st) 181098, ¶ 43; *Schwartz v. Illinois Human Rights Comm'n*, 2024 IL App (4th) 231248, ¶¶ 71-72. Indeed, a hearing officer may recommend dismissal if a party fails to file a required pleading, appear at a hearing, or otherwise not comply with the Act, the rules of the Commission, or a previous order of the hearing officer. 775 ILCS 5/8A-102(I)(6); 56 Ill. Adm. Code 5300.750(e). Here, the record reflects numerous instances by which Archambeau failed to do many of those things which are all individually sufficient for dismissal.

¶ 75    First, Archambeau intentionally failed to appear at the motion to withdraw hearing in August 2021, for which he does not deny receiving notice. He also does not argue that he informed the ALJ or opposing counsel in advance of his intended absence. Moreover, the ALJ also noted multiple times in her orders that she left a voicemail with counsel to which there was no response, and he does not dispute receiving the notification or that he failed to return the ALJ's call. In any event, contrary to Archambeau's contention, the Act and the rules make clear that failure to appear at a single hearing is sufficient to recommend dismissal with prejudice.

¶ 76    Further, in the December 2022 order, Archambeau was ordered by the ALJ to appear at the January 2023 hearing and to file an updated appearance with a current working e-mail address.

Archambeau contends that he did not receive that order. However, nothing in the record substantiates this claim. The order was not returned to the Commission as "undeliverable" and thus, pursuant to the Commission rules, was deemed "delivered" four days after the mailing date identified on the proof of service. This contrasts with the clear indication that the Commission's March 2023 order adopting the Recommended Order was not received, as it was returned as "undeliverable." See 16 Ill. Reg. 7838 (eff. June 1, 1992); see also 46 Ill. Reg. 17343 (eff. Oct. 5, 2022) (amending 56 Ill. Adm. Code 5300.30(c)); see also *Schwartz*, 2024 IL App (4th) 231248, ¶ 75 (" 'If the proper giving of the notice can now be frustrated by the mere allegation of the [party] that he [or she] did not receive it, then the giving of the notice by mail cannot be relied upon even though the rules specify such a method.' " (quoting *CitiMortgage, Inc. v. Lewis*, 2014 IL App (1st) 131272, ¶ 39)).

¶ 77    However, even without receiving the order requiring him to file an updated appearance, Commission rules required Archambeau to provide updated contact information, formally as of October 2022, and even informally as shown by documentation issued by the Commission after the complaint was initially filed. Given that his counsel had moved offices "effective" on December 1, 2022, his obligation to promptly update his contact information was even more significant, given the ALJ's indication in her August 2021 and December 2022 orders that she was prepared to rule on the dispositive motions, and even noting specifically in the August order that the rulings would be sent via mail. See, *e.g.*, *Network v. Illinois Human Rights Comm'n*, 2022 IL App (2d) 200251-U, ¶ 26 (assessing similar portion of administrative code for Department investigations, and observing that the rules placed "the onus of providing contact information on the complainant (or its representative) by requiring the complainant to *promptly* provide notice of *any* change or prolonged absence[,]" and that "failure to locate a complainant *may alone be*

*sufficient grounds* to dismiss the charge.") (Emphasis in original.) Notably, Archambeau does not argue non-receipt of the August 2021 order that specified such information. Thus, in sending his notice of address change almost six weeks after he moved offices, Archambeau's counsel was already setting himself up for failure in the event that the rulings were issued during the time period between December 1, 2022, and when he sent the notice on January 13, 2023, as such rulings may have also returned undeliverable or not properly forwarded to counsel's new address.

¶ 78     Additionally, Archambeau's contention that his e-mail had always been on file with the Commission is unavailing, as the rules appear to indicate that the Commission had not been allowed to send orders through e-mail until October 2022. Given the gaps in time in the case, the Commission could not just presume that whatever e-mail it had on file for him was still valid at time of service. Indeed, Archambeau's own logic fails on this point, where the record reflects that his own incorrect presumption that physical and e-mail addresses always remain the same, actually led to him sending his notice of address change to an office that the Commission had vacated months prior.

¶ 79     We note additionally that Archambeau did not attend the January 2023 hearing, an absence which was also sufficient for the ALJ to dismiss the case, as he had failed to comply with a previous order and had not appeared at a hearing. See *Schwartz*, 2024 IL App (4th) 231248, ¶¶ 72-79 (upholding sanction of default against employers, where their attorney failed to attend hearings and file a written appearance as required by Commission rules and prior orders, regardless of whether employers had actual knowledge of such violations).

¶ 80     In an attempt to explain away these events, Archambeau argues that his conduct was not as unreasonable or as egregious as conduct discussed in other published appellate or Commission cases to justify dismissal. In particular, he points to *MIFAB, Inc.*, 2020 IL App (1st) 181098, a

case cited by Fertility Centers and the Commission in support of affirmance. There, an employer sought review of a default liability order entered against it by the Commission pursuant to the same rule, 56 Ill. Adm. Code 5300.750(e). *Id.* ¶¶ 1, 16. The aggrieved employee filed a complaint with the Commission in 2008. *Id.* ¶ 5. Over three years, the employer missed three court appearances, filed motions past deadlines, failed to meet discovery deadlines, and did not respond to an amended complaint. *Id.* ¶¶ 6-12. The employee moved for sanctions, and the hearing officer issued attorney fees and costs after determining that the employer's conduct had caused unreasonable delay in the case. *Id.* ¶ 12. Additionally, the hearing officer warned the employer that if it did not comply with previous orders to respond to outstanding discovery, it would face more sanctions or a default judgment. *Id.* ¶ 13. After the employer again failed to comply, the employee filed a motion for default which the hearing officer granted. *Id.* ¶¶ 14, 16. The hearing officer reasoned that she had already issued sanctions to no avail, as the employer had failed to demonstrate any good faith reason for its conduct and continued to unreasonably delay the proceedings. *Id.* ¶ 16.

¶ 81    On appeal, the employer argued that the sanction was improper, as it had not violated *all* of the issued discovery orders, and that its conduct had not been deliberate, contumacious, or made in unwarranted disregard. *Id.* ¶ 42. The appellate court, affirming the default judgment, observed that the employer's actions demonstrated unreasonable delay which contributed to protracted proceedings. *Id.* ¶ 42. Specifically, the court pointed to the employer's repeated failure to comply with at least 15 discovery deadlines, failure to deliver courtesy copies to the Commission, its absence at three hearings without continuance requests, and the hearing officer's admonishment that further behavior would result in sanctions. *Id.* ¶ 44. In response to the employer's contention that its conduct had not been deliberate or contumacious, or showed unwarranted disregard for the hearing officer, the court observed that, even when assessing the employer's conduct under Illinois

Supreme Court 219(c) (eff. July 1, 2002), the rule governing sanctions in civil actions, its ruling would be the same. *Id.* ¶¶ 46-52.

¶ 82    Although we agree with Archambeau that the conduct in *MIFAB, Inc.* exhibited a very extreme version of sanctionable conduct before the Commission, we do not agree that his conduct needed to rise to that same level to warrant dismissal here. See *Schwartz*, 2024 IL App (4th) 231248, ¶¶ 72-79 (citing *MIFAB, Inc.*, and rejecting contention that Commission rules only allow for a sanction if party's conduct was deliberate, contumacious, or showed unwarranted disregard); *Habinka v. Human Rights Comm'n*, 192 Ill. App. 3d 343, 378 (1989) ("[E]ach case must be judged independently under its own set of facts.") As indicated above, a hearing officer is authorized to recommend dismissal pursuant to a variety of circumstances, ranging from a missed hearing date to noncompliance with prior orders. Further, Archambeau's focus on the Commission rules being geared only towards *unreasonable* conduct also misreads the Act and regulations. The Act itself says nothing about unreasonable conduct being the sole required trigger for such sanctions. Additionally, although the rules state that a sanction may be ordered for "unreasonable" noncompliance with an order or conduct that "unreasonably delays" proceedings, it also allows for sanctions based on a single missed court appearance or any conduct that protracts proceedings.

¶ 83    Finally, it is worth noting that many of the events leading to the sanction can be attributed to Archambeau's lackadaisical approach to tracking his own case. See, *e.g.*, *Marren Builders, Inc. v. Lampert*, 307 Ill. App. 3d 937, 943 (1999) (litigants have an independent obligation to be apprised of their own cases). Of course, life happens, mail does not get delivered, a party misses a court date, or one lists the wrong address on a filing. However, these mistakes occurred over a prolonged period of time, with some of them intentional in nature, such as choosing not to attend a hearing or delaying in providing updated contact information. It is not unreasonable to assume

that a party or represented counsel would want to keep track of his own case, given the filing of dispositive motions almost two years prior.

¶ 84    In sum, we are mindful that, prior to dismissal, the Commission had two fully briefed motions before it regarding a discrimination charge that the Department had viewed as substantial enough to file a complaint. It is our preference of this court to dispose of cases on the merits rather than on procedural technicalities. See, *e.g.*, *Illinois Bone & Joint Institute v. Kime*, 396 Ill. App. 3d 881, 883 (2009). Even so, we cannot countenance unreasonable delay. On this record, we do not find the Commission's final order to be arbitrary or capricious, or overly harsh in view of the mitigating circumstances, given the chances provided by the ALJ for Archambeau to comply, and that such events could have been easily avoided with simple research and communication. See *Network*, 2022 IL App (2d) 200251-U, ¶ 30 ("Just as it may be prudent in some circumstances to give a complainant a second, third, or, as here, a sixth chance to comply with its requests so that the Act's remedial purpose may be effectuated, it may be prudent in other circumstances to dismiss a complainant's charge for lack of cooperation."); *Illinois Bone & Joint Institute*, 396 Ill. App. 3d at 883 (in civil actions, although there is a preference to resolve cases on the merits, courts may also dismiss an action where a party fails to prosecute with due diligence in order to manage the court's docket and avoid unnecessary burdens on itself and other parties); *Zaddack v. A.B. Dick Co.*, 773 F.2d 147, 150 (7th Cir. 1985) (dismissal of dormant cases allows courts to keep "administrative control over their own dockets and to deter other litigants from engaging in similar dilatory behavior.")

¶ 85    Our holding is also bolstered by the fact that the Commission, as allowed for in its rules, gave Archambeau the opportunity to explain why he had failed to adequately communicate and participate in his own case for a significant period of time. Ultimately the Commission found his

explanations insufficient in light of the governing Act and the administrative record, and we do not find this determination to be unreasonable. Accordingly, we hold that the Commission's final order was not an abuse of discretion and affirm in its entirety.

¶ 86                                    III. CONCLUSION

¶ 87    For the reasons stated, the judgment of the Illinois Human Rights Commission is affirmed.

¶ 88    Affirmed.